DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
MARGARET W. BAUMGARTNER, State Bar #151762
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3859
Facsimile:      (415) 554-3837
E-Mail:          margaret.baumgartner@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
and ROSS MIRKARIMI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES STEINLE, individually and as heir to KATHRYN STEINLE, deceased; ELIZABETH SULLIVAN, individually, and as heir to KATHRYN STEINLE, deceased; and JAMES STEINLE and ELIZABETH SULLIVAN, as co-representatives of the Estate of KATHRYN STEINLE, <br><br> Plaintiffs, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, a governmental entity; CITY AND COUNTY OF SAN FRANCISCO, a governmental entity; ROSS MIRKARIMI, an individual; and JUAN FRANCISCO LOPEZ-SANCHEZ, an individual, <br><br> Defendants. | Case No. 16-cv-02859 JCS <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDATNS THE CITY AND COUNTY OF SAN FRANCISCO'S AND ROSS MIRKARIMI'S MOTION TO DISMISS** <br><br> Trial Date:            Not set. |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

INTRODUCTION ..................................................................................................................... 2

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT .............................................................................................................................. 4

    I.        STANDARD ON MOTION TO DISMISS ............................................... 4

    II.       THE COURT SHOULD DISMISS PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION BECAUSE DEFENDANTS OWED NO DUTY TO PLAINTIFFS TO INFORM ICE OF LOPEZ-SANCHEZ'S RELEASE DATE ......................... 5

        A.      No Duty Exists to Protect Steinle From Lopez-Sanchez's Criminal Activity ........................................................................................... 5

        B.      The Sheriff Did Not Have a Mandatory Duty Under State or Federal Law to Inform ICE of Lopez-Sanchez's Release Date ............................... 7

    III.     CALIFORNIA GOVERNMENT CODE §§ 845.8(A) AND 846 PROVIDE IMMUNITY SPECIFICALLY APPLICABLE TO PLAINTIFFS' CLAIM THAT DEFENDANTS SHOULD NOT HAVE RELEASED LOPEZ-SANCHEZ FROM SHERIFF'S CUSTODY .......................................... 10

    IV.     PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE NOT INFORMING ICE OF THE DATE OF LOPEZ-SANCHEZ'S RELEASE IS NOT THE PROXIMATE CAUSE OF STEINLE'S DEATH .................................................................................................. 12

    V.      THE FEDERAL DUE PROCESS CLAUSE DOES NOT PROVIDE FOR LIABILITY FOR HARM CAUSED TO A RANDOM PERSON BY A RELEASED UNDOCUMENTED IMMIGRANT ................................. 13

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**State Cases**

*Bolgna v. City and County of San Francisco,*
  192 Cal.App.4th 429 (2011) ...................................................................................10

*Brenneman v. State of California,*
  208 Cal.App.3d 812 (1989) ...............................................................................6, 11

*Carpenter v. City of Los Angeles,*
  230 Cal.App.3d 923 (1991) .....................................................................................6

*City of Sunnyvale v. Superior Court,*
  203 Cal.App.3d 839 (1988) ...................................................................................11

*Clausing v. San Francisco Unified School District,*
  221 Cal.App.3d 1224 (1990) ...................................................................................8

*County of Santa Barbara v. Superior Court,*
  15 Cal.App.3d 751 (1971) .....................................................................................11

*De Villers v. County of San Diego,*
  156 Cal.App.4th 238 (2007) ..................................................................................10

*Denton v. City of Fullerton,*
  233 Cal.App.3d 1636 (1991) ...................................................................................6

*Fleming v. State,*
  34 Cal.App.4th 1378 (1995) .........................................................................8, 12, 13

*Fredette v. City of Long Beach,*
  187 Cal.App.3d 122 (1986) ...................................................................................10

*Jackson v. Clements,*
  146 Cal.App.3d 983 (1983) .....................................................................................7

*Martinez v. State of California,*
  85 Cal.App.3d 430 (1978) .....................................................................................11

*Thompson v. County of Alameda,*
  27 Cal.3d 741, 746 (1980) ...........................................................................6, 7, 11

*Trinkle v. California State Lottery,*
  71 Cal. App. 4th 1198 (1999) ................................................................................10

*Wallace v. City of Los Angeles,*
  12 Cal.App.4th 1385 (1993) ...................................................................................6

*Whitcombe v. County of Yolo*,
    73 Cal.App.3d 698 (1977) ...........................................................................11, 13

*Zelig v. County of Los Angeles*,
    27 Cal.4th 1112 (2002) ...................................................................................5

**State Statutes & Codes**

California Civil Code
    § 3333 ...........................................................................................................12

California Government Code
    § 7282.5(a)(2) ...................................................................................2, 7, 9, 10

California Government Code
    § 815.2 ..........................................................................................................11

California Government Code
    § 815.6 .......................................................................................................8, 13

California Government Code
    § 818.2 ..........................................................................................................11

California Government Code
    § 820.2 ..........................................................................................................11

California Government Code
    § 845.8 ..........................................................................................................11

California Government Code
    § 845.8(a) ......................................................................................................10

California Government Code
    § 846 .......................................................................................................10, 11

S.F. Administrative Code
    § 1.50 .............................................................................................................9

**Federal Cases**

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) .....................................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................4

*Bowers v. DeVito*,
    686 F.2d 616 (7th Cir. 1982) .........................................................................14

*City of New York v. United States,*
    179 F.3d 29 (2d Cir. 1999) ...................................................................................9

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ...................................................................................5

*Doe v. New York City Department of Social Services,*
    709 F.2d 782 (2d Cir. 1983) *cert. denied* 464 U.S. 864 (1983)...............................14

*Galarza v. Szalczyk*
    745 F.3d 634 (3rd Cir. 2014) ................................................................................11

*In re Silicon Graphics Inc. Securities Litigation,*
    183 F.3d 970 (9th Cir. 1999) .................................................................................5

*Johnson v. Hurtt,*
    893 F.Supp.2d 817 (S.D. Tex. 2012) ......................................................................8

*Ketchum v. Alameda Cty.,*
    811 F.2d 1243 (9th Cir. 1987) .............................................................................14

*Koog v. United States,*
    79 F.3d 452, 460 (5th Cir.1996) ...........................................................................9

*Lazy Y Ranch LTD v. Behrens,*
    546 F.3d 580, 588 (9th Cir. 2008) ........................................................................5

*Marder v. Lopez,*
    450 F.3d 445 (9th Cir. 2006) ...............................................................................5

*Miranda-Olivares v. Clackamas Co.*
    2014 WL 1414305 (D. Or. April 11, 2014) ...........................................................11

*Morrison v. Washington Cty.,*
    700 F.2d 678 (11th Cir. 1983) *cert. denied* 464 U.S. 864 (1983)..........................14

*Moss v. U.S. Secret Service,*
    572 F.3d 962 (9th Cir. 2009) ...............................................................................4

*Parratt v. Taylor,*
    51 U.S. 527 (1981).............................................................................................14

*Printz v. United States,*
    521 U.S. 898 (1997)............................................................................................9

*Rinker v. County of Napa,*
    831 F.2d 829 (9th Cir. 1987) ..............................................................................14

*United States v. Del Toro,*
    513 F.2d 656 (2nd Cir. 1975) ...............................................................................9

*Withers v. Levine*,
  615 F.2d 158 (4th Cir. 1980), *cert. denied* 449 U.S. 849 (1980)................................14

**Federal Statutes**

8 United States Code
  § 1373(a) .........................................................................................................................2

8 United States Code
  § 1373 ..........................................................................................................7, 8, 9, 10

**Rules**

Federal Rules of Civil Procedure
  Rule 12(b)(6).................................................................................................................4

**Constitutional Provisions**

United States Constitution
  Amend. 10.....................................................................................................................9

United States Constitution
  Amend. 14.....................................................................................................................3

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 23, 2016 at 9:30 a.m. or as soon thereafter as this matter may be heard, before the Honorable Magistrate Judge Joseph C. Spero, United States District Court, 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Defendants City and County of San Francisco and Ross Mirkarimi will, and hereby do move the Court for an order dismissing plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants base their motion on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declarations, papers and other evidence submitted herewith, and such argument as may be heard.

Defendants move to dismiss Plaintiff's complaint on the following grounds:

1. Plaintiffs' First, Second and Third Causes of action, all based on negligence, on the grounds that Defendants do not owe a duty to plaintiffs as a matter of law and that plaintiffs cannot prove causation; and

2. Plaintiffs' Fourth cause of action on the grounds that the Due Process clause does not protect members of the public from criminal acts by prisoners released from custody.

Dated:  July 25, 2016

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
MARGARET W. BAUMGARTNER
Deputy City Attorney


By:*/s/Margaret W. Baumgartner*
    MARGARET W. BAUMGARTNER

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO AND
ROSS MIRKARIMI

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

The San Francisco Sheriff's Department released defendant Juan Francisco Lopez-Sanchez from jail custody on April 15, 2015, after the District Attorney dismissed the narcotics related charges pending against him. About two weeks prior to his release, the Department received an Immigration and Customs Enforcement department ("ICE") ICE request to voluntarily provide Lopez-Sanchez's release date. The Department did not provide that information to ICE. About two and a half months after his release, on July 1, 2015, Lopez-Sanchez used a gun he stole from a parked car to shoot and kill Kathryn Steinle. This suit follows that tragedy, which catapulted this incident into an ongoing politically-charged national debate over the nation's treatment of illegal immigrants.

Plaintiffs sue the City and County of San Francisco, its then-Sheriff Ross Mirkarimi ("the City defendants"), the United States Government, and Lopez-Sanchez. They assert that defendant Mirkarimi's memo setting forth the Sheriff Department's procedures for communicating with ICE, which requires a request and review of whether the Department legally must provide the information, makes him and the City liable for Steinle's death. Plaintiff brings three claims all based on negligence, and a claim under the Due Process clause of the Federal Constitution.

As to plaintiffs' three causes of action based on negligence, the Department does not owe a duty of care to the general public to protect them from the criminal actions of a person released from custody. Rather, a negligence claim requires that a special relationship exist between the decedent and the City defendants, and no such relationship existed here. In the absence of any such special relationship, plaintiffs cannot state a claim based on negligence. Also, City defendants are immune from civil liability under several statutes shielding public officials with respect to the release of prisoners.

Plaintiffs allege as a basis for negligence that the City has a mandatory duty to them under two statutes, one federal and one state. Neither section imposes any such mandatory duty. The federal statute 8 U.S.C. § 1373(a) contains prohibitory language only, not an affirmative command as is required to create a mandatory duty. The state code, California Government Code § 7282.5(a)(2), gives public officials the discretion to detain certain immigrant prisoners, which is the discretion

exercised by Sheriff Mirkarimi here. Neither of these statutes address in any way communication regarding the release date of a prisoner. Moreover, plaintiffs cannot allege sufficient facts to support an allegation that the Sheriff's adoption of the memo proximately caused Ms. Steinle's death. Thus, plaintiffs cannot state any negligence claim based on these statutes.

Plaintiffs also allege a violation of the 14th Amendment's substantive due process protections. But The 14th Amendment does not require a local municipal Sheriff's Department to comply with ICE's request to voluntary inform it of the potential release of a person in whom ICE has an interest. And it does not create municipal liability for the multiple criminal acts committed by a released prisoner occurring over two and a half months, which here resulted in the unfortunate death of Ms. Steinle.

Accordingly, the Complaint fails to state a cause of action against the City defendants and the Court should dismiss all of those claims with prejudice.

## STATEMENT OF FACTS

James Steinle and Elizabeth Sullivan, the parents and heirs of Kathryn Steinle, and co-representatives of Kathryn Steinle's estate, sue Defendants the City and County of San Francisco, its former Sheriff Ross Mirkarimi, the United States of America, and Juan Francisco Lopez-Sanchez. Plaintiffs allege that on July 1, 2015, Lopez-Sanchez used a gun he stole from a federal law enforcement employee's vehicle to shoot and kill Kathryn Steinle as she walked along Pier 14 of the San Francisco Embarcadero. Two and one-half months before the shooting, the San Francisco Sheriff's Department released Lopez-Sanchez, an undocumented immigrant, from custody. Plaintiffs allege that the Department did not inform ICE of Lopez-Sanchez release date prior to releasing him from custody, despite ICE's request that the Sheriff's Department notify ICE 48 hours before it released him and to detain him for 48 hours so that ICE could, if it decided to do so, assume his custody. (Complaint, ¶¶ 35.)

Plaintiffs assert that ICE would have taken custody of Lopez-Sanchez but that Sheriff Mirkarimi's March 13, 2015 issuance of a departmental memo that required specific approval and

procedures before an employee could release information to ICE prevented ICE from doing so.[1] (Complaint, ¶ 30)  The policy, known as the "March Memo," specifically required employees to obtain prior approval before providing ICE with any information on citizenship/immigration status, release date, and/or release time for any detainee, and indicated that the Sheriff's Department would give that approval only in if state or federal law required the Department to comply with the request. (Req. Jud. Not. Ex. A.)  Plaintiff asserts that the March Memo therefore caused Ms. Steinle's death, making the Sheriff and the City liable for monetary damages.

Plaintiffs sue the City defendants for Negligence, Negligence-Wrongful Death, Negligence-Survivor; and for violation of their Federal Civil Rights.  All the claims fail.

## ARGUMENT

## I.   STANDARD ON MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must allege actual facts, not "bare assertions. . . amount[ing] to nothing more than a `formulaic recitation of the elements' of a constitutional discrimination claim." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009).

In *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009), the Ninth Circuit explained the *Iqbal* and *Twombly* requirement that a plaintiff plead facts at least plausibly supporting a cause of action.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 969 (citations omitted) (granting motion to dismiss after rejecting as

---

[1] A copy of the Department's "March Memo" is attached to the City's request for judicial notice as Exhibit A.  Although plaintiffs in their complaint characterize the memo as absolutely forbidding conveyance of information to ICE, it does not.  Rather, the memo sets forth a procedure for providing such information, including when required by state or federal law.  The March Memo is no longer in effect, because in April 2016, the current Sheriff modified the policy.  (Req. Jud. Not. Ex. B.)

conclusion allegation that Secret Service moved demonstrators based on viewpoint discrimination and finding that allegations regarding differential treatment failed to raise plausible inference of discrimination).

In addition to rejecting conclusions, a court need not accept as true "allegations that are . . . unwarranted deductions of fact, or unreasonable inferences" nor "allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." See *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580 (9th Cir. 2008); see also *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999).  Here, Plaintiffs cite to and rely on the memo issued by Sheriff Mirkirimi in March 2015 ("March Memo") regarding permissible communications with ICE.  Therefore, the Court may consider this documents as part of a motion to dismiss.  See *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (court may consider on motion to dismiss documents referenced in complaint).  And, the Court need not accept as true contradictions to this document, or unwarranted facts or deductions arising from it.

## II. THE COURT SHOULD DISMISS PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION BECAUSE DEFENDANTS OWED NO DUTY TO PLAINTIFFS TO INFORM ICE OF LOPEZ-SANCHEZ'S RELEASE DATE

### A. No Duty Exists to Protect Steinle From Lopez-Sanchez's Criminal Activity

Plaintiffs' allege that defendants acted negligently by: "(1) creating and/or issuing the March Memo; (2) mandating an official policy forbidding all employees from contacting ICE regarding undocumented immigrants; (3) ignoring ICE's immigration detainer request; and/or (4) failing to notify, communicate, cooperate, assist and/or provide information to ICE regarding the release of Lopez-Sanchez from SFSD custody."  (Complaint, ¶ 47.)  But defendants owe no duty of care to plaintiff because the law does not require defendants to foresee or prevent criminal acts by a third party absent a special relationship between defendants and plaintiffs, which did not exist here.

"In this and in other jurisdictions, it is well established that public entities generally are not liable for failing to protect individuals against crime." *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1126 (2002) (finding no liability of City for shooting death of wife during family court hearing, even though wife had warned court personnel of the violent threats made by her husband).  The statistics

cited by plaintiffs in their complaint that they allege prove that undocumented immigrants have a higher recidivism rate does not change that rule. Even when a prisoner makes threats and the "likely result" of a release from custody is further criminal activity, a Department has no duty to protect. *See Thompson v. County of Alameda*, 27 Cal.3d 741, 746 (1980).

In *Thompson*, the county had custody of a juvenile and knew that he had "latent, extremely dangerous and violent propensities regarding young children and that sexual assaults upon young children and violence connected therewith were a likely result of releasing him into the community." *Id.* at 746 (quotations and parentheses omitted). The juvenile "had indicated that he would, if released, take the life of a young child residing in the neighborhood," though he "gave no indication of which, if any, young child he intended as his victim." *Id.* The county released the juvenile into his mother's temporary custody. Within a day, the juvenile murdered a neighbor child, the plaintiffs' son. *Id.* The plaintiffs sued the county and alleged that it had violated its duty of care toward them.

The California Supreme Court rejected the claim. In addressing the claim of failure to warn, the Court stated that "here County bore no special relationship with the specific plaintiffs nor did County knowingly place the specific plaintiffs' decedent into a foreseeably dangerous position." *Id.* at 751; see also *Brenneman v. State of California*, 208 Cal.App.3d 812 (1989) (holding that State not liable for paroling prisoner with violent proclivities, who then murdered decedent).

The government creates a duty toward a third party to protect from criminal harm only in situations in which the government had a direct relationship with the victim and placed the victim in a position of danger without then protecting him or her. *See Wallace v. City of Los Angeles*, 12 Cal.App.4th 1385 (1993) (police requested that victim be a witness, placed her in danger, and then failed to warn or protect her); *accord Carpenter v. City of Los Angeles*, 230 Cal.App.3d 923 (1991). Even when a law enforcement agency releases an inmate with a violent history who has made threats of harm directed at a much narrower set of possible victims than the general public, the agency cannot be held liable for subsequent criminal acts. *Thompson,* 27 Cal.3d at 752-54; *see also Denton v. City of Fullerton*, 233 Cal.App.3d 1636, 1643 (1991) (where officers knew of sexual assaults in the plaintiff's apartment complex and knew that assailant had attempted to enter plaintiff's apartment earlier in the day and where plaintiff was then assaulted that night, officers not liable for failing to inform plaintiff

of the sexual assaults); *Jackson v. Clements*, 146 Cal.App.3d 983 (1983) (officers not be liable for decision not to take action against underage drinkers who subsequently drove a car and killed decedents).

No such relationship existed here between the Sheriff's Department and Ms. Steinle. See *Thompson*, 27 Cal.3d at 753 ("plaintiffs have alleged neither that a direct or continuing relationship between them and County existed through which County placed plaintiffs' decedent in danger, nor that their decedent was a foreseeable or readily identifiable target of the [prisoner's] threats."). No facts support an argument that defendants created a foreseeable danger specific as to her.[2] All of the evidence shows that Lopez-Sanchez randomly chose a victim. Defendants had no way of knowing she in particular would be harmed. As a result, the Department owed no duty of care to plaintiffs, and the Court must dismiss all of plaintiffs' negligence claims.

**B.      The Sheriff Did Not Have a Mandatory Duty Under State or Federal Law to Inform ICE of Lopez-Sanchez's Release Date**

Plaintiffs assert liability for failure to comply with two statutes, claiming they create a mandatory duty. Specifically, Plaintiffs assert that the Sheriff violated a mandatory duty imposed by 8 U.S.C. § 1373 and California Government Code § 7282.5(a)(2) by adopting the "March Memo" and therefore he can be held liable for negligence.

Section 815.6 provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Here, neither section upon which plaintiffs rely creates a mandatory duty, neither address communications concerning release dates, and neither prohibit the adoption of the policy reflected in the March Memo.

---

[2] There is some doubt as to whether Lopez-Sanchez intended to shoot Ms. Steinle, as it appears that the bullet shows marks from a ricochet, which Lopez-Sanchez's defense attorney indicates that shows Lopez-Sanchez accidentally shot her. See
http://www.breitbart.com/california/2015/08/28/bullet-that-killed-kathryn-steinle-apparently-ricocheted-90-to-95-feet-to-hit-her/

To qualify under § 815.6 as a "mandatory duty," the duty must be "one which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses." *Fleming v. State*, 34 Cal.App.4th 1378, 1383-84 (1995). The duty must constitute an "affirmative duty on the part of a government agency to perform some act"; a "prohibition" is insufficient to support a claim. *Clausing v. San Francisco Unified School District*, 221 Cal.App.3d 1224, 1239 (1990). For example, in *Clausing*, the court addressed the statute prohibiting corporal punishment in schools. It rejected a claim of mandatory duty to implement that statute because the statute "set forth no guidelines or rules for schools to follow . . . . If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise prohibitory statute, it cannot create a mandatory duty." *Id.* at 1240 (citations omitted). The court went on to describe the public policy supporting this limitation. It held that interpreting prohibitory statutes as creating a mandatory duty "would transform any and all statutes setting forth prohibitions on certain conduct into mandatory injunctions on individuals or entities requiring them to take affirmative action to protect other members of the public from the kinds of harm which the statutes seek to prevent through prohibition." The court explained "[t]he potential ramifications to society and the legal system itself of such an interpretation, in terms of exposure to civil liability and damages, would be great and enormously costly." *Id.*

8 U.S.C. § 1373 does not require a government to take any type of affirmative act. 8 U.S.C. § 1372 provides that:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

Because this provision simply prohibits certain types of conduct, but provides no obligation to act, it does not create an affirmative duty. *See Johnson v. Hurtt*, 893 F.Supp.2d 817 (S.D. Tex. 2012) (8 U.S.C. § 1373 does not provide rights to an individual to sue, finding that the statute does not "address any particular individual needs.") And, even if it did, the statute addresses only the exchange of information regarding the citizenship and immigration status of prisoners, not their release dates.

Here the federal government already had information regarding Lopez-Sanchez immigration status. Plaintiffs therefore cannot base a negligence claim on its provisions.

Also, this section addresses restrictions only on a government entity or official. Not all government employees are "officials." See, e.g., S.F. Administrative Code § 1.50 (defining public officer); *United States v. Del Toro*, 513 F.2d 656 (2nd Cir. 1975) (differentiating public official from employee under federal bribery statute). Thus, although this section may, for example, prohibit the Board of Supervisors from restricting the Sheriff from communicating with the federal government about immigration and citizenship status should he chose to do so, it does not prohibit the Sheriff from issuing policies regarding the manner in which his employees speak on behalf of the Department in response to ICE's voluntary requests. See *Printz v. United States*, 521 U.S. 898 (1997) ("Moreover, '[w]hatever the outer limits of state sovereignty may be, it surely encompasses the right to set the duties of office for state-created officials and to regulate the internal affairs of governmental bodies.'"), *quoting Koog v. United States*, 79 F.3d 452, 460 (5th Cir.1996); cf. *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) (finding § 1373 constitutional on its face; noting 10th Amendment argument of right of local government to manage officials and employees but stating that "the City has chosen to litigate this issue in a way that fails to demonstrate an impermissible intrusion on state and local power to . . . regulate the duties and responsibilities of state and local governmental employees.").

Similarly, California Government Code § 7282.5(a)(2) does not addresses communication between local law enforcement and ICE. It simply provides permission to exercise discretion to detain individuals under certain defined circumstances. It provides:

> A law enforcement official shall have discretion to cooperate with federal immigration officials by detaining an individual on the basis of an immigration hold after that individual becomes eligible for release from custody only if the continued detention of the individual on the basis of the immigration hold would not violate any federal, state, or local law, or any local policy, and only under any of the following circumstances [listing circumstances that would allow cooperation].

Cal. Gov't Code § 7282.5(a)(2). It would turn this statute on its head to read this grant of discretion to impose liability under the guise of a mandatory duty. Plaintiffs must look elsewhere for a statutory basis for their mandatory duty claim.

Neither of these sections creates a mandatory duty to provide information to ICE, and therefore plaintiffs cannot claim negligence based on them.

Additionally, violation of a mandatory duty imposed by an enactment is insufficient, by itself, to establish liability. Rather, liability exists "only if . . . the person injured was one of the class of persons for whose benefit the statute was adopted." *Fredette v. City of Long Beach*, 187 Cal.App.3d 122, 134 (1986). "Whether the injury involved resulted from an occurrence of the nature which the statute was designed to prevent and whether the plaintiff was one of the persons for whose protection the statute was enacted are questions of law." *Id.* at 135; *see also De Villers v. County of San Diego*, 156 Cal.App.4th 238, 257 (2007) ("Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment confers some benefit on the class to which plaintiff belongs is not enough; if the benefit is incidental to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6.") (citations and quotations omitted); *Trinkle v. California State Lottery*, 71 Cal.App.4th 1198, 1203 (1999) ("Where the harm was not one of the evils sought to be prevented by the statute, there can be no governmental liability.").

The Court has specifically held that the Legislature did not intend to protect members of the public from harm by released undocumented immigrants. See *Bolgna v. City and County of San Francisco*, 192 Cal.App.4th 429 (2011) (holding that protection of the public from violent crimes was not the intent of 8 U.S.C. § 1373).

## III. CALIFORNIA GOVERNMENT CODE §§ 845.8(A) AND 846 PROVIDE IMMUNITY SPECIFICALLY APPLICABLE TO PLAINTIFFS' CLAIM THAT DEFENDANTS SHOULD NOT HAVE RELEASED LOPEZ-SANCHEZ FROM SHERIFF'S CUSTODY

The California Legislature had adopted a number of provisions granting immunity to government officials for the consequences of their decisions to release potentially violent persons from custody, all of which apply here. California Government Code § 845.8(a) grants immunity to public entities and employees for "[a]ny injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." California Government Code § 846 provides immunity to public entities and employees "for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." Furthermore, the release of a prisoner is a discretionary

decision, and thus falls within the immunity provided in California Government Code § 820.2 for "an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." See also Govt. Code § 815.2 (providing that public entities are immune if their employees are immune).

Plaintiffs' sue defendants based entirely on the Sheriff's issuance of a memo which they claim resulted in the decision to release Lopez-Sanchez from custody before contacting, reporting or otherwise voluntarily cooperating with ICE. (Complaint, ¶ 36.) *See also Galarza v. Szalczyk,* 745 F.3d 634 (3rd Cir. 2014) (ICE requests are voluntary, and and the county is free to ignore them. That alleged decision falls squarely within the numerous decisions finding that these three Government Code Sections immunized defendants from any liability based on releasing a prisoner. *Thompson,* 27 Cal. 3d at 748 (dismissing claim by parents of child murdered by prisoner who prior to release threatened to kill an unidentified child because immune under §§ 820.2 and 845.8); *Brenneman v. State of California*, 208 Cal.App.3d 812 (1989) (dismissing claim by parents of child murdered by violent parolee under §§ 820.2 and 845.8); *Martinez v. State of California*, 85 Cal.App.3d 430 (1978) (immunity under § 845.8 for decision to release dangerous parolee who murdered decedent); *Whitcombe v. County of Yolo*, 73 Cal.App.3d 698 (1977) (suit based on decision not to revoke probation of person who then assaulted the plaintiffs, holding that the court not required to analyze "discretion" under § 820.2 because § 845.8 bars liability); *County of Santa Barbara v. Superior Court*, 15 Cal.App.3d 751 (1971) (immunity under §§ 845.8 and 846 for release of prisoner on bail, who then killed decedent); s*ee City of Sunnyvale v. Superior Court*, 203 Cal.App.3d 839 (1988) (immunity under § 846 for officers' decision not to arrest drunk driver, when drunk driver subsequently injured plaintiff). *See also* Govt. Code § 818.2 (immunity for discretionary decision not to enforce the law). Particularly given that the Sheriff could be held liable for complying with an ICE request in certain circumstances, the Sheriff's decision falls squarely within the discretionary decisions for which discretionary immunity applies. Cal. Gov't Code § 820.2; *see Miranda-Olivares v. Clackamas Co*. 2014 WL 1414305 (D. Or. April 11, 2014) (existence of ICE request to detain did not preclude liability for violation of the Fourth Amendment for holding prisoner).

The Court should therefore dismiss all of plaintiffs' state law claims based on that decision.

## IV.    PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE NOT INFORMING ICE OF THE DATE OF LOPEZ-SANCHEZ'S RELEASE IS NOT THE PROXIMATE CAUSE OF STEINLE'S DEATH

Defendants' alleged misconduct — *i.e.*, issuing a memo regarding how and when the Department may report Lopez-Sanchez's release date to immigration authorities — is too attenuated from Plaintiffs' injuries to be their proximate cause. *See* Civil Code § 3333. "Proximate cause is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury ... and without which such result would not have occurred." *Fleming v. State of California*, 34 Cal.App.4th 1378 (1995) (quotations and citation omitted). Many discretionary decisions and acts would have had to occur to prevent Lopez-Sanchez from being out of custody in San Francisco. For example:

(1)    Someone in the Department would have to decide to voluntarily report Lopez-Sanchez's release date;

(2)    ICE would have to decide that resources and priorities permitted responding to the Department's information on a timely basis;

(3)    Federal authority would have to decide that Lopez-Sanchez was undocumented and subject to removal;

(4)    ICE would have to initiate removal proceedings and decide to expend resources for that purpose;

(5)    If Lopez-Sanchez made a bail request, the Court would have to deny it,

(6)    A judge would have to rule that Lopez-Sanchez was removable and then order that he be removed, including rejecting any defenses that Lopez-Sanchez might assert;

(7)    The Board of Immigration Appeals and Ninth Circuit would have had to affirm the judge's removal order;

(8)    ICE would have to remove Lopez-Sanchez; and

(9)    Lopez-Sanchez would have had to remain outside of the country and not reenter the U.S.

Courts have rejected proximate cause claims similar to this one, that is, claims in which a defendant's actions did not lead directly to the plaintiff's injuries but rather were alleged to have set in

motion a series of events requiring the exercise of discretion by other persons over whom the defendant had no control. In *Fleming*, a parolee murdered the plaintiffs' decedent. The plaintiffs sued the State on the theory that state parole officials had not arrested the parolee when he had violated certain rules and that the State therefore was liable for the murder. The court rejected that claim on various grounds, including lack of proximate cause:

> [T]he alleged breach was not a legal or proximate cause of plaintiffs' injuries, as required by the statute [*i.e.*, Government Code section 815.6] . . . . Here, the failure to arrest [the parolee] was not in itself a cause of the injury, since arrest without a period of incarceration would not necessarily have prevented the crime. Incarceration, however, would have involved procedural steps involving the exercise of discretion and thus have broken the causal chain.

*Id.* at 1384; *see Whitcombe v. County of Yolo,* 73 Cal.App.3d at 703 (1977) (holding that county's decision to release probationer was not proximate cause of probationer's attack on plaintiff, because even though county had provided information to the court and advised the court, the court ultimately made an independent determination about whether to release the probationer).

Here, the chain of causation is too attenuated and speculative to establish proximate cause. As in *Fleming* and *Whitcombe,* defendants' actions were not the proximate cause of plaintiffs' injuries because of all the interceding discretionary acts. The fact that several other entities and persons (including Lopez-Sanchez himself) would have had to take actions outside of defendants' control to effect Lopez-Sanchez's removal is fatal to any claim. The Court should dismiss all of plaintiffs' claims.

## V. THE FEDERAL DUE PROCESS CLAUSE DOES NOT PROVIDE FOR LIABILITY FOR HARM CAUSED TO A RANDOM PERSON BY A RELEASED UNDOCUMENTED IMMIGRANT

Plaintiffs' fourth cause of action attempts to allege a violation of Ms. Steinle's 14th Amendment Due Process rights pursuant to 42 U.S.C. § 1983, claiming that the Sheriff's issuance of the March Memo caused their harm. Like with plaintiffs' negligence claim, they fail to state a claim for relief because they have not alleged the requisite "special relationship" between their decedent and defendants necessary to establish the defendants' duty to protect her from a third party's criminal acts.

To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the

plaintiff of a federal constitutional or statutory right. *Rinker v. County of Napa*, 831 F.2d 829, 831 (9th Cir. 1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).) With respect to the second element, "[t]he prevailing rule in the circuits is that citizens have no constitutional right to be protected by the state from attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public." *Ketchum v. Alameda Cty.,* 811 F.2d 1243, 1247 (9th Cir. 1987) (stating that even if the state is "remiss" in allowing a third person to be in a position to cause harm to the public, the due process clause does not create liability). "In defining this 'special relationship,' courts have considered whether there is a custodial relationship created or assumed by the state, whether the state is aware of a specific risk of harm to the plaintiff, or whether the state has affirmatively placed the plaintiff in a position of danger." *Id.* (citations omitted). Specific examples of such a special relationship include prison inmates under known risk of harm from homosexual assaults by other inmates, *Withers v. Levine*, 615 F.2d 158, (4th Cir. 1980), *cert. denied*, 449 U.S. 849 (1980), children in the custody and care of state social service agencies, *Doe v. New York City Department of Social Services*, 709 F.2d 782 (2d Cir. 1983) *cert. denied* 464 U.S. 864 (1983); and persons in the care of state hospitals, *Morrison v. Washington Cty.,* 700 F.2d 678 (11th Cir. 1983), *cert. denied*, 464 U.S. 864 (1983). *See also Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Here, the Sheriff did not create a custodial relationship with Ms. Steinle and did not know of any specific risk to her as opposed to the public at large. Plaintiff's allegation that defendant Mirkarimi's issuance of the March Memo lead to the failure to "notify, contact, communicate, and/or cooperate with ICE regarding LOPEZ-SANCHEZ's release from" custody does not state a claim for deprivation of constitutional rights. (Complaint, ¶¶ 99, 100.) Therefore, the Court should dismiss this cause of action should be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For all the foregoing reasons, Defendants request that Plaintiffs' Complaint be dismissed with prejudice as to them.

Dated: July 25, 2016

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
MARGARET W. BAUMGARTNER
Deputy City Attorney

By: */s/Margaret W. Baumgartner*
MARGARET W. BAUMGARTNER

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO AND
ROSS MIRKARIMI