1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney
2
    SARA WINSLOW (DCBN 457643)
3   Chief, Civil Division

4   ROBIN M. WALL (CABN 235690)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7071
7       Fax: (415) 436-6748
        Robin.Wall@usdoj.gov
8
    Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13

14   JAMES STEINLE, individually and as heir to   )   Case No. 16-cv-02859-JCS
     KATHRYN STEINLE, deceased; ELIZABETH          )
15   SULLIVAN, individually, and as heir to        )   **DEFENDANT UNITED STATES OF**
     KATHRYN STEINLE, deceased; and JAMES          )   **AMERICA'S NOTICE OF MOTION AND**
16   STEINLE and ELIZABETH SULLIVAN, as            )   **MOTION TO DISMISS; MEMORANDUM OF**
     co-representatives of the Estate of KATHRYN   )   **POINTS AND AUTHORITIES; [PROPOSED]**
     STEINLE,                                      )   **ORDER**
17                                                 )
          Plaintiffs,                              )   Date:      December 2, 2016
18                                                 )   Time:      9:30 a.m.
          v.                                       )   Location:  Courtroom G, 15th Floor
19                                                 )              450 Golden Gate Avenue
     UNITED STATES OF AMERICA; CITY AND            )              San Francisco, California
20   COUNTY OF SAN FRANCISCO; and ROSS             )
     MIRKARIMI,                                    )   Hon. Joseph C. Spero
21                                                 )
          Defendants.                              )
22                                                 )
                                                   )
23   _____       )

24

25

26

27

28

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES .................................................................................................................ii

3   NOTICE OF MOTION AND MOTION ..............................................................................................1

4   RELIEF SOUGHT BY DEFENDANT .................................................................................................1

5   ISSUES TO BE DETERMINED ...........................................................................................................1

6   MEMORANDUM OF POINTS AND AUTHORITIES .......................................................................2

7   INTRODUCTION ..................................................................................................................................2

8   STATEMENT OF FACTS ....................................................................................................................3

9   STANDARDS .........................................................................................................................................4

10   I.       Rule 12(b)(1) standard. ..............................................................................................................4

11   II.      Rule 12(b)(6) standard. ..............................................................................................................4

12   ARGUMENT ..........................................................................................................................................5

13   I.       Plaintiffs' claims related to the conduct of ICE should be dismissed...........................................5

14           A.       ICE's attempts to detain and deport Mr. Lopez-Sanchez are protected by the
                       discretionary function exception to FTCA liability. ...................................................5
15
             1.       ICE's actions respecting Mr. Lopez-Sanchez were discretionary ..........................7
16
17           2.       ICE's decisions respecting Mr. Lopez-Sanchez are susceptible to
                       policy analysis....................................................................................................11

18           B.       Plaintiffs have failed to state a claim for negligence under California law. ......................12

19           1.       Defendant United States has not waived sovereign immunity under the
                       FTCA for alleged federal statutory violations by ICE...........................................13
20
             2.       Plaintiffs have failed to allege facts establishing a duty under
21                    California law...................................................................................................14

22           3.       ICE's actions were not the proximate cause of Ms. Steinle's death ....................17

23   II.      Plaintiffs' claims related to the conduct of a BLM ranger should be dismissed .........................18

24           A.       Defendant United States has not waived sovereign immunity under the FTCA
                       for alleged violations of federal statutory or regulatory duties...........................................19
25
             B.       Plaintiffs have failed to show duty or causation under California law with
26                    respect to the stolen firearm...........................................................................................19

27   CONCLUSION.....................................................................................................................................24

28

# TABLE OF AUTHORITIES

## Cases

*Arteaga-Ruiz v. United States,*
-- F. Supp. 3d --, 2016 WL 707360 (D. Idaho Feb. 22, 2016).................................. 7, 11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................... 5

*Association of Am. Med. Colls. v. United States,*
217 F.3d 770 (9th Cir. 2000).............................................................................. 4

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................... 5

*Berkovitz v. United States,*
486 U.S. 531 (1988)........................................................................................... 6

*Bologna v. City and County of San Francisco,*
192 Cal. App. 4th 429 (2011)............................................................................ 15

*Brenneman v. State of California,*
208 Cal. App. 3d 812 (1989).............................................................................. 16

*Bridges v. Parrish,*
742 S.E.2d 794 (N.C. 2013)........................................................................... 20, 21

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010)............................................................................ 4

*Clarke v. United States,*
107 F. Supp. 3d 238 (E.D.N.Y. 2015)............................................................ 11, 14

*Comm. for Immigrant Rights of Sonoma Cty. v. Cty of Sonoma,*
644 F. Supp. 2d 1177 (N.D. Cal. 2009)........................................................... 9, 10

*Cortez v. Lynch,*
No.  H-15-3306, 2016 WL 1059532 (S.D. Tex. March 17, 2016) ........................ 10

*Deacon v.  Shanahan,*
No. 15-00407, 2016 WL 1688577 (N.D. Ala. Apr. 1, 2016)............................... 9

*Delta Savings Bank v. United States,*
265 F.3d 1017 (9th Cir. 2001)....................................................................... 5, 13

*Douglas v. United States,*
796 F. Supp. 2d 1354 (M.D. Fla. 2011)............................................................ 11

*Dugard v. United States,*
-- F.3d --, 2016 WL 4488007 (9th Cir. Aug. 26, 2016).............................. 14, 15, 16

*Dugard v. United States,*
No. 11–cv–04718–CTB, 2013 WL 6228625 (N.D. Cal. Nov. 27, 2013)............ 14, 16, 19

*Estate of Strever v. Cline,*
   278 Mont. 165 (1996) ................................................................ 20, 21, 22, 23

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ................................................................................ 13, 14

*Finocchio v. Mahler,*
   37 S.W.3d 300 (Mo. Ct. App. 5th Dist. 2000) ........................................ 20, 21

*Fleming v. State of California,*
   34 Cal. App. 4th 1378 (1995) ....................................................................... 17

*Fraley v. Facebook, Inc.,*
   830 F. Supp. 2d 785, 793 (N.D. Cal. 2011) ................................................... 4

*Gallara v. Koskovich,*
   836 A.2d 840 (N.J. Super. 2003) .................................................................. 20

*Gonzalez–Ramirez v. Sec. of U.S. Dept. of Homeland Sec.,*
   529 Fed. Appx. 177 (3d Cir. 2013) ................................................................. 9

*Harris v. Smith,*
   157 Cal. App. 3d 100 (1984) ........................................................................ 16

*Hosh v. Lucero,*
   680 F.3d 375 (4th Cir. 2012) .......................................................................... 9

*Hosking v. Robles,*
   98 Cal. App. 3d 98 (1979) ............................................................................ 21

*Hucko v. City of San Diego,*
   179 Cal. App. 3d 520 (1986) ........................................................................ 15

*Ileto v. Glock Inc.,*
   349 F.3d 1191 (9th Cir. 2003) ...................................................................... 12

*Jachetta v. United States,*
   653 F.3d 898 (9th Cir. 2011) .................................................................... 13, 19

*Jackson v. City & County of San Francisco,*
   No. C 09-2143 RS, 2012 WL 3580525 (N.D. Cal. Aug. 17, 2012) ................ 19

*Jacoves v. United Merch. Corp.,*
   9 Cal. App. 4th 88 (1992) ............................................................................. 20

*Jimenez-Angeles v. Ashcroft,*
   291 F.3d 594 (9th Cir. 2002) .......................................................................... 7

*Johnson v. Sawyer,*
   47 F.3d 716 (5th Cir. 1995) .......................................................................... 13

*Jones v. Secord,*
   684 F.3d 1 (1st Cir. 2012) ...................................................................... 20, 21

*Kelly v. United States,*
   241 F. 3d 755 (9th Cir. 2001) ........................................................................ 6

*Khoury v. Asher,*
   3 F. Supp. 3d 877 (W.D. Wash. 2014)..................................................................... 9

*Khoury v. Asher,*
   -- Fed. Appx. --, 2016 WL 4137642 (9th Cir. Aug. 6, 2016) (unpublished) ............ 9

*Koepke v. Loo,*
   18 Cal. App. 4th 1444 (1993) ........................................................................... 5, 18

*Kokkonen v. Guardian Life Ins. Co.,*
   511 U.S. 375 (1994).............................................................................................. 4

*Lawrence v. United States,*
   340 F.3d 952 (9th Cir. 2003) ............................................................................... 18

*Lesoeur v. United States,*
   21 F.3d 965 (9th Cir. 1994) .................................................................................. 6

*Lora v. Shanahan,*
   804 F.3d 601 (2d Cir. 2015)........................................................................ 8, 9, 10

*Love v. United States,*
   60 F.3d 642 (9th Cir. 1995) ................................................................................. 13

*McGrane v. Cline,*
   973 P.2d 1092 (Wash. 1999)......................................................................... 20, 21

*Medina v. United States,*
   259 F.3d 220 (4th Cir. 2001) ................................................................................ 7

*Megeff v. Doland,*
   123 Cal. App. 3d 251 (1981) .............................................................................. 21

*Miller v. United States,*
   163 F.3d 591 (9th Cir. 1998) ............................................................................... 11

*Mirmehdi v. United States,*
   689 F.3d 975 (9th Cir. 2011) .......................................................................... 8, 12

*Mitchell v. United States,*
   787 F. 2d 466 (9th Cir. 1986) ............................................................................... 7

*Palma v. U.S. Industrial Fasteners, Inc.,*
   36 Cal.3d 171 (1984) .................................................................................... 21, 22

*Paskenta Band of Nomlaki Indians v. Crosby,*
   122 F. Supp. 3d 982 (E.D. Cal. 2015).............................................................. 5, 18

*Powell v. Standard Brands Paint Co.,*
   166 Cal. App. 3d 357 (1985) ........................................................................ 18, 23

*Prescott v. U.S.,*
   973 F.2d 696 (9th Cir. 1992) ................................................................................ 6

*Reida v. Lund,*
   18 Cal. App. 3d 698 (1971) .......................................................................... 19, 22

*Reno v. American–Arab Anti–Discrimination Comm.,*
    525 U.S. 471 (1999) .................................................................................. 7

*Res-Care Inc. v. Roto-Rooter Servs. Co.,*
    753 F. Supp. 2d 970 (N.D. Cal. 2010) ..................................................... 18

*Richards v. Stanley,*
    43 Cal.2d 60 (1954) .................................................................................. 21

*Romero v. Nat'l Rifle Ass'n of Am., Inc.,*
    749 F.2d 77 (D.C. Cir. 1984) .................................................................... 20

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) .................................................................... 4

*Schrimsher v. Bryson,*
    58 Cal. App. 3d 660 (1976) ................................................................ 17, 18

*Soobzokov v. Holder,*
    No. 10-6260-DRD, 2011 WL 2293853 (D.N.J. June 7, 201l) .................... 7

*Tarasoff v. Regents of the University of California,*
    17 Cal.3d 425 (1976) ................................................................................ 15

*Terbush v. United States,*
    516 F.3d 1125 (9th Cir. 2008) .................................................................... 6

*Thompson v. County of Alameda,*
    27 Cal.3d 741 (1980) ................................................................................ 16

*United States v. Gaubert,*
    499 U.S. 315 (1991) ........................................................................ 6, 7, 11

*United States v. Olson,*
    546 U.S. 43 (2005) .................................................................................... 13

*United States v. S.A. Empresa De Viacao Aerea Rio Grandense,*
    467 U.S. 797 (1984) ................................................................................ 6, 7

*United States v. Sherwood,*
    312 U.S. 584 (1941) .................................................................................. 13

*United States v. Testan,*
    424 U.S. 392 (1976) .................................................................................. 13

*Valentine v. On Target, Inc.,*
    727 A.2d 947 (Md. 1999) ..................................................................... 20, 21

*Vu v. Singer Co.,*
    706 F.2d 1027 (9th Cir. 1983) ................................................... 5, 14, 15, 16

*Wallace v. City of Los Angeles,*
    12 Cal. App. 4th 1385 (1993) ................................................................... 16

*Warner v. Santa Catalina Island Co.,*
    44 Cal.2d 310 (1955) ................................................................................ 20

*Williams v. State of California,*
   34 Cal.3d 18 (1983) ........................................................................................................ 16

*Wright v. United States,*
   719 F.2d 1032 (9th Cir. 1983) ........................................................................................ 7

*Zelig v. County of Los Angeles,*
   27 Cal. 4th 1112 (2002) ............................................................................................ 15, 16

## Statutes

8 U.S.C. § 1226 ............................................................................................................ 8, 9, 10, 13

8 U.S.C. § 1252 .................................................................................................................... 7

8 U.S.C. § 1357 ............................................................................................................... 8, 9, 13

28 U.S.C. § 2671 ................................................................................................................. 1, 2

28 U.S.C. § 2672 .................................................................................................................. 13

28 U.S.C. § 2680 ................................................................................................................ 5, 6

Cal Penal Code § 25610 ...................................................................................................... 19

## Rules

Federal Rule of Civil Procedure 12 ............................................................................... 1, 4, 12

## Regulations

8 C.F.R. § 236 .................................................................................................................... 10

8 C.F.R. § 287.2 .................................................................................................................. 10

8 C.F.R. § 287.7 .................................................................................................................. 10

### NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2016, at 9:30 a.m., in Courtroom G, 15th Floor, of the U.S. District Courthouse, 450 Golden Gate Avenue, San Francisco, California, the Honorable Joseph C. Spero presiding, defendant United States of America will appear and move the Court for an order dismissing plaintiffs' claims against the United States without leave to amend pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant's motion is made on the grounds that (i) the discretionary function exemption to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. ("FTCA") precludes this Court from exercising jurisdiction over plaintiffs' claims against the United States for the alleged conduct of United States Immigration and Customs Enforcement; and (ii) plaintiffs have failed to state a claim for negligence under the FTCA because (a) the FTCA does not waive the sovereign immunity of the United States with respect to alleged violations of federal law; (b) plaintiffs have failed to allege facts establishing a duty under California law; and (c) the conduct of the United States was not the cause of Kathryn Steinle's death.

Defendant's motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Christopher Shanahan, the pleadings and other papers on file in this action, and on such oral argument as the Court may permit.

### RELIEF SOUGHT BY DEFENDANT

Defendant United States seeks dismissal of plaintiffs' claims against the United States without leave to amend.

### ISSUES TO BE DETERMINED

1.  Whether the discretionary function exemption to the FTCA precludes this Court from exercising jurisdiction over plaintiffs' claims against the United States for the alleged conduct of United States Immigration and Customs Enforcement;

2.  Whether the Court can exercise jurisdiction over plaintiffs' FTCA claims based on alleged violations of federal law; and

3.  Whether plaintiffs have stated an actionable tort claim under applicable California law.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant United States of America brings this motion to dismiss plaintiffs' claims against the United States for two principal reasons. First, the exercise of prosecutorial discretion by United States Immigration and Customs Enforcement ("ICE") regarding when and how to seek custody of Juan Francisco Lopez-Sanchez is protected by the discretionary function exemption to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. ("FTCA"). ICE does not have the resources to appear at every location where an illegal alien subject to deportation is being released by state or local authorities. Accordingly, ICE must make decisions regarding whom to pursue for detention and deportation and how to do so. In this case, ICE sought to detain Mr. Lopez-Sanchez and process him for deportation. ICE sent a detainer request to the San Francisco Sheriff's Department ("SFSD") asking the SFSD to notify ICE before releasing Mr. Lopez-Sanchez and hold him until ICE could send officers to take him into custody. This was an appropriate exercise of the agency's discretion regarding how to bring Mr. Lopez-Sanchez—a repeat drug offender—into custody, and no federal statute or regulation required ICE to do more.

Second, plaintiffs have not stated a claim for negligence against the United States under the FTCA. As an initial matter, an FTCA claim cannot be predicated on a violation of federal law, but that is what plaintiffs allege here with respect to the conduct of both ICE and the United States Bureau of Land Management ("BLM"). Plaintiffs have also failed to show duty and causation—two necessary elements of their negligence claim under California law. California law does not impose a duty on law enforcement to act affirmatively to prevent specific crimes absent a special relationship between the law enforcement officials and a foreseeable and specifically identifiable victim. Unfortunately, no one knew that Kathryn Steinle would be the victim of a crime more than two and a half months after Mr. Lopez-Sanchez was released by the SFSD. Neither does California law impose liability on a gun owner for a crime committed with a stolen gun under the circumstances alleged here. Finally, the alleged conduct of the United States was not the cause of Ms. Steinle's death—in a tragic and unforeseen act, Mr. Lopez-Sanchez killed her.

## STATEMENT OF FACTS

Juan Francisco Lopez-Sanchez is an undocumented immigrant with a nonviolent criminal history.  (Compl. ¶ 21.)  On or about March 26, 2015, Mr. Lopez-Sanchez completed a sentence he had been serving at the Victorville Federal Correctional Complex in Victorville, California.  (*See* Compl. ¶ 22.)  While Mr. Lopez-Sanchez had been serving his sentence at Victorville, and before he was released from prison, the San Francisco Sheriff's Department ("SFSD") requested custody of Mr. Lopez-Sanchez so that he could appear for an outstanding warrant for the felony sale of marijuana. (Compl. ¶ 22.)  In accordance with and because of that request, the Federal Bureau of Prisons released Mr. Lopez-Sanchez from federal custody at Victorville to the custody of SFSD.  (*See* Compl. ¶ 22.)

On or around March 27, 2015, ICE sent a detainer request to SFSD asking SFSD to return Mr. Lopez-Sanchez to federal custody following his detention by local authorities.  (Compl. ¶¶ 34-35.)  The ICE detainer request asked SFSD to (1) notify ICE forty-eight hours before releasing Mr. Lopez-Sanchez so that ICE could assume his custody and (2) detain Mr. Lopez-Sanchez until ICE could assume custody.  (*See* Complaint ¶ 35.)  SFSD did not honor the ICE detainer request; and on April 15, 2015, instead of returning Mr. Lopez-Sanchez to federal custody, SFSD released him without informing ICE.  (Compl. ¶ 36.)  Plaintiffs allege that SFSD's non-compliance with the ICE detainer request was the result of an SFSD policy not to honor ICE detainer requests unless "a judicial order or warrant was issued for deportation."  (Compl. ¶ 38.)

Two-and-a-half months later, on or about June 27, 2015, a government-issued handgun was stolen from a vehicle parked in San Francisco.  (Compl. ¶ 44.)  The handgun had been issued to a BLM ranger; and plaintiffs allege that the handgun had been left in a backpack in the vehicle in plain sight of passersby when it was stolen.  (*Id.*)  At some point between June 27 and July 1, 2015, the stolen firearm came into the possession of Mr. Lopez-Sanchez.  (*See* Compl. ¶ 44.)

On July 1, 2015, Mr. Lopez-Sanchez shot and killed Kathryn Steinle on Pier 14 on the San Francisco Embarcadero.  (Compl. ¶¶ 17-18.)  On or around July 10, 2015, a handgun was retrieved from San Francisco Bay.  (Compl. ¶ 45.)  The San Francisco Police Department's forensic crime laboratory confirmed that the handgun was the gun fired by Mr. Lopez-Sanchez; and BLM identified the handgun as the same one that had been taken from the Ranger's vehicle.  (Compl. ¶ 45.)

On or around August 31, 2015, plaintiffs James Steinle, Elizabeth Sullivan, and the Estate of Kathryn Steinle filed an administrative tort claim with ICE and the Department of the Interior ("DOI") seeking $25 million in damages.  Both ICE and DOI denied the administrative claim on January 15, 2016.

On May 27, 2016, plaintiffs filed their complaint in this Court asserting claims for negligence against the United States based on the conduct of ICE and the BLM.  (*See* Compl. ¶¶ 46-94.)

## STANDARDS

### I.   Rule 12(b)(1) standard.

A Rule 12(b)(1) challenge is "facial," disputing the formal sufficiency of the pleadings to establish federal jurisdiction, or "factual," disputing the substance of the jurisdictional allegations despite their formal sufficiency.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where a challenge is facial, the district court determines "whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction."  *Fraley v. Facebook, Inc*., 830 F. Supp. 2d 785, 793 (N.D. Cal. 2011).  Where a challenge is factual, the district court determines whether it can hear the case before it by resolving factual disputes as to the existence of subject matter jurisdiction.  *Id*. (citing *Safe Air for Everyone*, 373 F.3d at 1039).  In doing so, the district court "'need not presume the truthfulness of the plaintiff's allegations'" and may review evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *Id*. (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

"Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction."  *Id*. (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010)).  Until a plaintiff presents admissible evidence to satisfy this burden, a district court presumptively lacks subject matter jurisdiction.  *Association of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).  In sum, a plaintiff must prove that jurisdiction exists in order to survive a Rule 12(b)(1) motion to dismiss.

### II.   Rule 12(b)(6) standard.

Rule 12(b)(6) governs dismissal of a case for failure to state a claim upon which relief can be

granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When a plaintiff fails to allege sufficient factual matter to state a claim, dismissal is proper.  *See id.*

## ARGUMENT

### I.   Plaintiffs' claims related to the conduct of ICE should be dismissed.

Plaintiffs assert claims for negligence against the United States on the basis of alleged conduct by ICE.  (*E.g.*, Complaint ¶¶ 60-64, 83-89, 90-94.)   Those claims should be dismissed because (A) ICE's decision regarding whether and how to detain and/or remove Mr. Lopez-Sanchez from the United States falls within its prosecutorial discretion, which is protected by the discretionary function exception to the FTCA, *see* 28 U.S.C. § 2680(a); and (B) plaintiffs' allegations do not state a prima facie negligence claim under the FTCA because: (1) ICE's alleged failure to perform federal statutory duties is not actionable under the FTCA, which only waives sovereign immunity for legal duties defined under state law, s*ee, e.g., Delta Savings Bank v. United States*, 265 F.3d 1017, 1024-25 (9th Cir. 2001); (2) plaintiffs have failed to allege facts showing a legal duty on the part of ICE, *see Vu v. Singer Co.*, 706 F.2d 1027, 1029 (9th Cir. 1983) (no duty to control conduct of another absent a "special relationship" to either the person whose conduct needs to be controlled or to a "foreseeable and specifically identifiable victim" of that conduct,); and (3) ICE's alleged conduct was not the cause of Kathryn Steinle's death, because Mr. Lopez-Sanchez's criminal conduct was an independent and superseding cause.  *See, e.g., Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp. 3d 982, 996 (E.D. Cal. 2015) ("'Criminal conduct which causes injury will ordinarily be deemed the proximate cause of an injury, superseding any prior negligence which might otherwise be deemed a contributing cause.'") (quoting *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449 (1993)).

#### A.   ICE's attempts to detain and deport Mr. Lopez-Sanchez are protected by the discretionary function exception to FTCA liability.

Plaintiffs' claims are barred by the discretionary function exception to FTCA liability, because

1  ICE's decisions regarding when and how to pursue the detention and removal of Mr. Lopez-Sanchez

2  were discretionary.

3       Pursuant to what has become known as the "discretionary function exception," the FTCA's

4  waiver of sovereign immunity does not apply to:

5          [a]ny claim ... based upon the exercise or performance or the failure to
        exercise or perform a discretionary function or duty on the part of a

6          federal agency or an employee of the Government, whether or not the
        discretion involved be abused.

7  28 U.S.C. § 2680(a).  This exception "marks the boundary between Congress' willingness to impose tort

8  liability upon the United States and its desire to protect certain governmental activities from exposure to

9  suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense ("Varig*

10  *Airlines")*, 467 U.S. 797, 808 (1984).  The exception is designed to "prevent judicial 'second guessing'

11  of legislative and administrative decisions grounded in social, economic, and political policy through the

12  medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Varig*

13  *Airlines*, 467 U.S. at 814).  Where the exception applies, no federal subject matter jurisdiction exists.

14  *Lesoeur v. United States*, 21 F.3d  965, 967 (9th Cir. 1994).  Although plaintiffs bear the burden of

15  establishing that the court has subject matter jurisdiction under the FTCA's general waiver of immunity,

16  defendant bears the burden of proving the applicability of the discretionary function exception.  *Prescott*

17  *v. U.S.*, 973 F.2d 696, 702 (9th Cir. 1992).

18       In analyzing whether an agency decision falls within the discretionary function exception, the

19  Supreme Court has defined a two-part test.  First, the Court must consider whether the act or decision in

20  question involves "an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536

21  (1988).  While "the discretionary function exception will not apply when a federal statute, regulation, or

22  policy specifically prescribes a course of action for an employee to follow," *id*.; a general rule or policy

23  does not remove discretion for the purposes of the exception unless it specifically prescribes a course of

24  conduct.  *Kelly v. United States*, 241 F. 3d 755, 761 (9th Cir. 2001).  Second, the act or decision must be

25  "based on considerations of public policy." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir.

26  2008) (internal citations and quotations omitted).  "The focus of the inquiry is not on the agent's

27  subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the

28

actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.  The question of whether the defendant was negligent is irrelevant to the discretionary function jurisdictional analysis. *Mitchell v. United States*, 787 F. 2d 466, 468 (9th Cir. 1986).

Plaintiffs sue the United States for the wrongful death of Ms. Steinle allegedly caused by ICE's decisions regarding when and how to seek custody of Mr. Lopez-Sanchez.  ICE's exercise of its prosecutorial discretion fulfills both prongs of the discretionary function test.

### 1. ICE's actions respecting Mr. Lopez-Sanchez were discretionary.

ICE has broad prosecutorial discretion to arrest aliens and commence immigration proceedings. *See, e.g.*, *Medina v. United States*, 259 F.3d 220, 229 (4th Cir. 2001) ("Even though the INS ultimately decided not to pursue the deportation of Medina, we are fully satisfied that the initial decision to initiate proceedings and arrest him was the type of agency conduct Congress intended to immunize in the discretionary function exception."); *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability."), *abrogated on other grounds*, *Begay v. United States*, 768 F.2d 1059, 1062 n. 2 (9th Cir. 1985) (citing *Varig Airlines*, 467 U.S. 797); *Arteaga-Ruiz v. United States*, -- F. Supp. 3d --, 2016 WL 707360, *4-6 (D. Idaho Feb. 22, 2016) (dismissing negligence and false imprisonment claims against ICE); *Soobzokov v. Holder*, No. 10-6260-DRD, 2011 WL 2293853, *6 (D.N.J. June 7, 201l) (dismissing emotional distress tort claim based on failure to arrest and prosecute); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 484–85 (1999).  The Immigration and Nationality Act specifically protects ICE's discretionary decisions regarding the commencement of removal proceedings and execution of removal orders. *See* 8 U.S.C. § 1252(g); *see also Reno*, 525 U.S. at 485, n. 9 ("Section 1252(g) was directed against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion."); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (courts lack jurisdiction over "not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding") (emphasis in original).  With respect to detention in particular, "the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy."[1]

---

[1] More specifically, ICE has authority to detain any alien pending a decision in removal proceedings,

1   *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011).  This discretion applies here to the

2   decisions regarding Mr. Lopez-Sanchez.

3        When an individual in custody is identified by ICE as being an alien potentially subject to

4   deportation—like Mr. Lopez-Sanchez—"ICE must then determine how to proceed with respect to that

5   alien, including whether to lodge a detainer or otherwise purse the alien's detention and remove from the

6   United States upon the alien's release from criminal custody."  (Declaration of Christopher Shanahan

7   ("Shanahan Decl.") ¶ 6.)  ICE has the discretion to decide whether lodging a detainer and pursuing

8   removal is consistent with ICE's policy objectives and the best means of carrying out its immigration

9   enforcement responsibilities.  (*Id*. ¶¶ 6, 8.)

10        Plaintiffs allege, however, that ICE was subject to a "mandatory duty" to detain and deport Mr.

11   Lopez-Sanchez, citing 8 U.S.C. § 1226(c) and 8 U.S.C. § 1357(d).  (*See* Compl. ¶¶ 60-62, 83.)  More

12   specifically, plaintiffs allege that ICE had an obligation to "detain" Mr. Lopez-Sanchez, "obtain a

13   judicial order or warrant for [his] deportation," and "take custody" of Mr. Lopez-Sanchez while he

14   remained in the custody of the SFSD.  (Compl. ¶ 60.)  Contrary to plaintiffs' allegations, neither Section

15   1226(c) nor Section 1357(d) imposed these obligations, much less dictate exactly when and how ICE

16   should have pursued the detention and deportation of Mr. Lopez-Sanchez.

17        Section 1226(c) did not require ICE to detain Mr. Lopez-Sanchez or seek a judicial order to

18   remove him from the custody of the SFSD.  Section 1226(c) provides for mandatory detention of aliens

19   who have committed certain enumerated offenses listed in Section 1226(c)(1)(A)-(D) and have been

20   taken into custody by the Department of Homeland Security ("DHS") following their release from non-

21   DHS custody.  *See generally Lora v.  Shanahan*, 804 F.3d 601, 608-613 (2d Cir. 2015) (discussing

22   statutory provision).  Mr. Lopez-Sanchez was transferred to SFSD custody pursuant to a criminal

23   warrant for felony sale of marijuana.  (Compl. ¶ 22.)  The San Francisco District Attorney's Office then

24   decided not to pursue the charge, and Mr. Lopez-Sanchez was neither charged with nor convicted of an

25

26   ──────────────

27   and has discretion to release some aliens.  8 U.S.C. § 1226(a).  Aliens who have been convicted of
certain enumerated offenses, however, including drug crimes, may be subject to mandatory detention.
8 U.S.C. § 1226(c)(1).  The Attorney General has discretion to release such aliens from detention only in

28   limited circumstances not applicable here—e.g., upon a determination that release is necessary to protect
a witness in a criminal matter.  8 U.S.C. § 1226(c)(2).

1    enumerated controlled substance violation.  Instead SFSD released him without notifying ICE.  (Compl.

2    ¶¶ 22, 34.)  Thus, Mr. Lopez-Sanchez was not serving a sentence with SFSD for an enumerated offense,

3    and thus was not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c).

4          Even if Mr. Lopez-Sanchez had been subject to mandatory detention under Section 1226(c), the

5    statute should not be interpreted to require ICE to take custody of an alien immediately after release

6    from non-DHS custody.  *See, e.g.*, *Hosh v. Lucero*, 680 F.3d 375, 378-381 (4th Cir. 2012); *Gonzalez–*

7    *Ramirez v.  Sec. of U.S. Dept. of Homeland Sec.*, 529 Fed. Appx. 177, 179 (3d Cir. 2013), *cert. denied*,

8    134 S.Ct.  956 (2014); *see also Deacon v. Shanahan*, No. 15-00407, 2016 WL 1688577, at *3 (N.D. Ala.

9    Apr. 1, 2016).  Many of the courts that have examined the issue have held that an alien subject to

10   Section 1226(c) can be detained even if the statutory authority is "not exercised immediately upon the

11   alien's release."  *E.g., Lora*, 804 F.3d at 612-13 (joining Third, Fourth, and Tenth Circuits).[2]  In a short

12   unpublished (and therefore non-precedential opinion, *see* Circuit Rule 36-3(a)), the Ninth Circuit held to

13   the contrary, stating that "the phrase 'when ... released' conveys a degree of immediacy," and that the

14   federal government should not be able to "hold without bond aliens whose detention is untimely under §

15   1226(c)."  *Khoury v. Asher,* -- Fed. Appx. --, 2016 WL 4137642 (9th Cir. Aug. 6, 2016) (unpublished).

16   Importantly, the decision in *Khoury* speaks to the limits on ICE's ability to hold an alien, not on whether

17   ICE must do so.  In any event, Section 1226(c) require ICE to obtain a judicial order to remove an alien

18   from non-DHS custody, as plaintiffs allege.

19         Section 1357(d) also did not require ICE to detain Mr. Lopez-Sanchez.  Pursuant to Section

20   1357(d), ICE "shall promptly determine whether or not to issue … a detainer" to detain an alien <u>if</u> a

21   federal, state, or local law enforcement officer asks ICE to do so in connection with the arrest of the

22   alien for any law relating to controlled substances.  That is, Section 1357(d) only requires ICE to take

23   action after it receives a request from law enforcement.  *See* 8 U.S.C. § 1357(d)(3); *see also Comm. for*

24

25   ―――――――――――――――
     [2] Even those courts that have held to the contrary acknowledge that not all aliens who have committed
26   an enumerated offense will be taken into DHS custody immediately upon release from non-DHS
     custody.  *See Khoury v. Asher*, 3 F. Supp. 3d 877, 889 (W.D. Wash. 2014), *affirmed*, -- Fed. Appx. --,
27   2016 WL 4137642 (Mem.) (9th Cir. Aug. 4, 2016).  "In the context of § 1226, the availability of
     ordinary bond hearings is a satisfactory alternative to mandatory detention in cases where DHS has
28   already foregone the benefits of mandatory detention through failure to detain the alien upon his release
     from non-DHS custody."  *Id.*

*Immigrant Rights of Sonoma Cty. v. Cty of Sonoma,* 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009). Even then, ICE need only determine whether or not to issue a detainer. In any event, SFSD never requested a determination from ICE regarding whether the agency would issue a detainer for Mr. Lopez-Sanchez; accordingly, the ICE was under no statutory obligation to do so.

More generally, ICE's decisions regarding which aliens to pursue and how to take custody of those aliens are within the agency's discretion. *See, e.g.,* 8 U.S.C. § 1226(a) ("alien *may* be arrested"); 8 C.F.R. §§ 236.l(b) ("respondent *may* be arrested") and 287.2 ("shall take such further action as he or she deems necessary"); and 287.7 (authorized immigration official "*may* at any time" issue a detainer). "Operating with limited resources, ICE must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens." *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011). The Second Circuit acknowledged this precise issue when it noted that its interpretation of Section 1226(c)—which does not require immediate post-release detention—accounts for "practical concerns arising in connection with enforcing the statute." *Lora*, 804 F.3d at 612. That is:

> Particularly for criminal aliens in state custody, it is unrealistic to assume that DHS will be aware of the exact timing of an alien's release from custody, nor does it have the resources to appear at every location where a qualifying alien is being released.

*Id*. at 612-613; *see also Cortez v. Lynch*, No. H-15-3306, 2016 WL 1059532, at *2 (S.D. Tex. March 17, 2016). In this regard, Section 1226(c) says nothing about how to detain an alien released from non-DHS custody: the statute does not require ICE to seek a judicial order or warrant, much less require ICE to station an officer outside a non-DHS facility when a release date is uncertain. Similarly, Section 1357(d) does not require ICE to issue a detainer, only that the agency must make a determination if requested to do so by a law enforcement officer in certain circumstances. Moreover, ICE has no policies or procedures that require it to abide by the local law enforcement demands to accept a detainer. In this case, the decision to seek the detention of Mr. Lopez-Sanchez and issue a detainer request to SFSD was an appropriate exercise of ICE discretion regarding who to detain pending deportation proceedings—*i.e.*, Mr. Lopez-Sanchez—and how to go about it.

## 2.   ICE's decisions respecting Mr. Lopez-Sanchez are susceptible to policy analysis.

The second question in the two-step discretionary function analysis is whether the discretion invokes the type of judgment that the exception was intended to shield, *i.e.*, whether it is based on considerations of public policy. *Miller v. United States*, 163 F. 3d 591, 593 (9th Cir. 1998). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Where the relevant federal statute, regulation, or agency guidelines permits for the exercise of discretion by a government official or employee, there is a presumption that the exercise of that discretion implicates policy judgments. *See Gaubert*, 499 U.S. at 324. ICE's conduct also meets the second prong of the discretionary function exception test.

ICE is a federal agency tasked with enforcing federal laws governing border control, customs, trade, and immigration in order to promote homeland security and public safety.[3] With respect to the enforcement of federal immigration law, ICE plays a key role, serving as the agency responsible for the investigation of immigration-related crimes and the apprehension and removal of individuals from the United States, among other functions. (Shanahan Decl. ¶ 8.) In setting priorities to accomplish its mission, one predominant factor that ICE must consider is the differential between the number of people present in the United States illegally—more than 10 million individuals[4]—and the number of people ICE has the resources to remove each year. (*Id.* at ¶ 9.) Accordingly, ICE's decisions regarding where and how to spend its resources to arrest and detain suspected aliens involve considerations of public policy. (*Id.*) *See also Douglas*, 796 F. Supp. 2d at 1369 ("ICE must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens."); *Arteaga-Ruiz*, 2016 WL 707360, at *5 (same); *Clarke v. United States*, 107 F. Supp. 3d 238, 245-48 (E.D.N.Y. 2015) (holding that ICE was not negligent in failing to prevent the killing of a woman by a criminal alien because ICE had no duty to deport the alien and the ICE officers' actions toward the alien were subject to the discretionary function exception to the

---

[3] *See* https://www.ice.gov/about.

[4] *See* https://www.dhs.gov/topic/immigration-enforcement-overview.

FTCA).  The Ninth Circuit has recognized that "the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy."  *Mirmehdi*, 689 F.3d at 984.

Here, ICE sent a detainer request to SFSD on or about March 27, 2015, requesting notification of Mr. Lopez-Sanchez's release and that SFSD hold him until ICE was able to take custody.  (Compl. ¶¶ 34-35.)  SFSD did not respond to the request and released Mr. Lopez-Sanchez two weeks later on March 27, 2015, without informing ICE.  Even assuming arguendo that ICE was on notice that SFSD would not cooperate with the detainer request (*see* Compl. ¶¶ 30, 32, 38), the determination regarding how to deal with that non-compliance unquestionably involves policy considerations, including, among other things, resource allocation, federal-state comity, and ICE's enforcement priorities.  (*See* Shanahan Decl. ¶¶ 6, 8-11).

Because both parts of the discretionary function test have been satisfied with respect to ICE's actions, plaintiffs' FTCA claims premised on those actions should be dismissed.

**B.   Plaintiffs have failed to state a claim for negligence under California law.**

Even if the court had subject matter jurisdiction over plaintiffs' FTCA claims, plaintiffs have failed to state a claim upon which relief can be granted according to the standards required by Federal Rule of Civil Procedure 12(b)(6).  In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages.  *Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003).  Plaintiffs' complaint does not adequately plead duty, breach, or causation with respect to its claims based on ICE's conduct.  First, FTCA liability cannot be predicated on alleged violations of federal law—as plaintiffs plead here—because the United States has not waived its sovereign immunity under the FTCA for such violations.  Second, California law does not impose an affirmative duty on law enforcement to protect the plaintiffs from third-party criminal conduct absent a special relationship with the plaintiffs or other special circumstances; and the very limited circumstances in which such a duty might arise are not present here.  Third, Mr. Lopez-Sanchez killed Ms. Steinle, and that and other alleged actions by defendants and third parties were independent and superseding causes that preclude liability based on ICE's conduct.

1

2

### 1. Defendant United States has not waived sovereign immunity under the FTCA for alleged federal statutory violations by ICE.

Plaintiffs' first and second causes of action for negligence assert that ICE had a mandatory duty to detain and/or deport Mr. Lopez-Sanchez under federal law, but failed to do so. (Compl. ¶¶ 62, 83-89.)  Plaintiffs assert that ICE allegedly "disregard[ed] mandatory duties defined by federal statutes" and, specifically, violated 8 U.S.C § 1226(c)(1) and 8 U.S.C. § 1357(d) when ICE did not detain or deport Mr. Lopez-Sanchez.  (*E.g.*, Compl. ¶¶ 62, 83-89.)  The violations of federal law alleged by plaintiffs cannot provide a basis for FTCA liability.

The doctrine of sovereign immunity bars actions against the United States except where it clearly and explicitly consents to be sued.  *United States v. Testan*, 424 U.S. 392, 399 (1976).  The terms of such consent, as expressly set forth by Congress, define the Court's subject matter jurisdiction to entertain suits against the United States.  Such consent must be strictly interpreted.  *United States v. Sherwood*, 312 U.S. 584, 590-591 (1941).  The FTCA provides a limited waiver of sovereign immunity for damages for "injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 2672.

Importantly, the FTCA provides a remedy for violations of state, not federal, law.  *See, e.g.*, *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011) (affirming dismissal of FTCA claims arising under federal law); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024-25 (9th Cir. 2001) (holding that the FTCA does not waive the government's sovereign immunity for claims alleging violations of 42 U.S.C. § 1986); *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (en banc) ("[T]he FTCA was not intended to redress breaches of federal statutory duties.") (citation omitted).  As the Supreme Court explained in *FDIC v. Meyer*, "we have consistently held that [the FTCA's] reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA."  510 U.S. 471, 478 (1994).[5]  Thus, in order to state an

---

[5] The FTCA "waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort, but not based on local standards for '"state or municipal entity"' liability.  *United*

1    FTCA claim, the plaintiff must allege a violation of the "law of the place where the act or omission

2    occurred."  *Meyer*, 510 U.S. at 478-479.

3          Here, plaintiffs' negligence claims are premised on alleged "mandatory duties" arising under

4    federal, not California, law.  (*See* Compl. ¶¶ 62, 83-89.)  As a result, the court lacks subject matter

5    jurisdiction and the claims should be dismissed.  "Failure of a duty to perform mandatory federal

6    functions does not itself give rise to a FTCA claim; rather, the source of substantive liability, under the

7    FTCA, is law of the state in which the cause of action accrued."  *Dugard v. United States*, No. 11–cv–

8    04718–CTB, 2013 WL 6228625, at *3 (N.D. Cal. Nov. 27, 2013) (citing *FDIC v. Meyer*, 510 U.S. at

9    477-78).

10          For example, in *Clark v. United States*, the district court dismissed the claims of a surviving

11   spouse whose wife was murdered by an illegal alien released by ICE.  107 F. Supp. 3d 238, 245

12   (E.D.N.Y. 2015).  The surviving spouse claimed that ICE had a duty under federal law to remove the

13   alien from the United States, but the Court held that the spouse's claims "do not provide a cause of

14   action under the FTCA" because sovereign immunity has not been waived for violations of federal law.

15   *Id*.

16          Plaintiffs' claims against ICE in this case are essentially the same as in *Clark*.  Plaintiffs allege

17   that the United States is responsible for Ms. Steinle's death because ICE allegedly violated federal

18   immigration legal law by not detaining and deporting Mr. Lopez-Sanchez.  (*E.g.*, Compl. ¶ 83.)  The

19   Court does not need to determine whether ICE violated any federal law or duty (and it did not), because

20   the FTCA does not waive sovereign immunity for any such alleged violations.  Accordingly, the Court

21   lacks subject-matter jurisdiction to adjudicate plaintiffs' claims.

22          **2.      Plaintiffs have failed to allege facts establishing a duty under California law.**

23          California law does not impose a duty on law enforcement to act affirmatively to prevent specific

24   crimes absent a "special relationship to either the person whose conduct needs to be controlled or in a

25   relationship to the foreseeable victim of that conduct."  *Vu v. Singer Co.*, 706 F.2d 1027, 1029 (9th Cir.

26

27   *States v. Olson*, 546 U.S. 43, 44 (2005).  Accordingly, there is no basis to assert "public entity
     negligence" under the FTCA as plaintiffs have done here.  (*See* Compl. ¶¶ 68-89 (Second Cause of

28   Action).)  Indeed, it is not clear that there are any private analogs under California state law applicable
     to ICE's conduct at issue here, which involved decisions regarding detention and deportation.

1   1983).  Plaintiffs' have not pleaded a special relationship here, and thus their pleaded allegations do not

2   establish the required element of duty.

3        Under California law, "it is well established that public entities generally are not liable for failing

4   to protect individuals against crime." *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1126 (2002)

5   (citations omitted).[6]  "'[A]s a general rule, one person owe[s] no duty to control the conduct of

6   another.'"  *Vu*, 706 F.2d at 1029 (quoting *Tarasoff v. Regents of the University of California*, 17 Cal. 3d

7   425, 435 (1976)).  "A police officer does not act affirmatively to increase the risk of harm simply by

8   failing to stop a citizen from acting dangerously."  *Id.*; *see also Bologna v. City and County of San*

9   *Francisco*, 192 Cal. App. 4th 429, 434 (2011) ("[A]bsent a special relationship, public entities ordinarily

10   bear no common law duty to protect specific individuals against crime."); *Hucko v. City of San Diego*,

11   179 Cal. App. 3d 520, 522 (1986) (police officers are not liable for unreasonable performance of their

12   duties absent conduct which causes specific potential victims to rely on police or otherwise increases the

13   risk of injury).  California courts have recognized exceptions to this rule "in cases in which the

14   defendant stands in some special relationship to either the person whose conduct needs to be controlled

15   or in a relationship to the foreseeable victim of that conduct."  *Vu*, 706 F.2d at 1029.

16        In a recently-published decision in *Dugard v. United States*, the Ninth Circuit affirmed the

17   application of this standard against federal officials under the FTCA and affirmed the district court's

18   finding that a federal parole officer had "no duty of reasonable care" to the plaintiffs, who were the

19   victims of serious crimes by a federal parolee.  *Dugard v. United States*, -- F.3d --, available at 2016 WL

20   4488007, *3-5 (9th Cir. Aug. 26, 2016).  In *Dugard*, the Ninth Circuit stated that under California law in

21   the criminal rehabilitation context, "private facilities owe a duty only to individuals that are foreseeable

22   and specifically identifiable victims of their wards' conduct."  *Id*. at *3 (citing *Vu*, 706 F.2d at 1029).

23   The court went on to state that because the plaintiff Dugard "has not argued, and submits no facts to

24

25   _____

26   [6] While municipal entity liability standards are not generally applicable under the FTCA, the Ninth
    Circuit stated in *Dugard* that "[i]n locating an analogous private party under the FTCA ... , it is
    appropriate to look to cases involving public entities or public immunities, so long as the policies
27   underlying them are applicable to private parties in the state as well."  *Dugard*, -- F.3d --, at 2016 WL
    4488007, at *4.  Applying that rule, the Ninth Circuit held that "[l]imiting liability here, for officials
28   involved in the release and rehabilitation of criminal offenders, is consistent with California's policies
    encouraging criminal rehabilitation for public and private parties alike."  *Id*.

1  suggest, that she was a specifically identifiable victim, she would not have a viable claim against an

2  analogous private person under California law." *Id*. at *4.  Thus, "[b]ecause a private individual in like

3  circumstances would not be liable under California law, the United States cannot be held liable under

4  the FTCA for the conduct of the parole officer here." *Id*. at *5.

5      Here plaintiffs have not pleaded any facts to establish a special relationship with Mr. Lopez-

6  Sanchez or the plaintiffs, nor to suggest that Ms. Steinle was a "foreseeable and specifically identifiable

7  victim." *Vu*, 706 F.2d at 1030.  While Ms. Steinle's death was tragic, it was not a reasonably

8  foreseeable consequence of ICE's actions.  Courts have consistently found no duty in situations where

9  harm was far more foreseeable and the connection between government conduct and the resulting harm

10  far closer than the allegations here.  *See Dugard,* 2013 WL 6228625, at *11 (finding the U.S. was not

11  liable under California law for failing to protect the plaintiff from kidnapping and other crimes even

12  though perpetrator was on federal parole during time of the crimes); *Zelig*, 27 Cal. 4th 1112 at 1126

13  (finding city not liable for shooting death at family court hearing, despite victim's prior warnings to

14  court personnel of shooter's violent threats); *Thompson v. County of Alameda*, 27 Cal. 3d 741, 746

15  (1980) (finding county not liable for murder of child by juvenile offender even when juvenile "had

16  indicated that he would, if released, take the life of a young child residing in the neighborhood");

17  *Brenneman v. State of California*, 208 Cal. App. 3d 812, 818-820 (1989) (finding state not liable for

18  paroling violent prisoner who went on to commit murder after release from custody).

19      Nor have plaintiffs pleaded any other facts that might establish a special relationship.  "[T]he

20  plaintiff must show an affirmative act which placed her in peril or increased the risk of harm, an

21  omission or failure to act after a promise was made, or a special relationship in which she relied to her

22  detriment on official conduct in a situation of dependency." *Harris v. Smith*, 157 Cal. App. 3d 100, 105

23  (1984) (citing *Williams v. State of California*, 34 Cal.3d 18, 23 (1983)).[7]  Again, none of these factors

24  are present here.  ICE did not create the peril to Ms. Steinle; took no affirmative action which

25  contributed to, increased, or changed the risk that otherwise existed; did not voluntarily assume any

26  responsibility to protect plaintiffs; and made no statement or promise to induce any reliance.  According,

27

28  _____
[7] *See, e.g., Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385 (1993) (finding duty where police asked victim to be a witness, placed her in danger, and then failed to warn or protect her).

1   ICE had no duty with respect to the harm alleged here.  *See id.* at 105-109.

2       Because plaintiffs have failed to plead facts supporting the existence of a duty, plaintiffs'

3   negligence claims based on ICE's alleged conduct should be dismissed.

4               **3.      ICE's actions were not the proximate cause of Ms. Steinle's death.**

5       Plaintiffs' negligence claims fail for the independent reason that ICE's alleged conduct was not

6   the cause of Ms. Steinle's death.  "Proximate cause is that cause which, in natural and continuous

7   sequence, unbroken by any efficient intervening cause, produced the injury … and without which such

8   result would not have occurred."  *Fleming v. State of California,* 34 Cal. App. 4th 1378, 1384 (1995)

9   (quotations and citation omitted).  Ms. Steinle's tragic death was not the consequence of a "natural and

10  continuous sequence of events" following from ICE's alleged conduct.  There are a number of

11  intervening acts—criminal and otherwise—that had to take place before the tragic death of Ms. Steinle

12  could have resulted:  SFSD had to fail to honor the ICE detainer request; Mr. Lopez-Sanchez had to be

13  released from SFSD custody; the BLM ranger's firearm had to be left in his vehicle; the vehicle had to

14  be broken into and the firearm stolen; the firearm had to be transferred to Mr. Lopez-Sanchez (if he was

15  not the original thief); the firearm had to be discharged, whether negligently, recklessly, or

16  intentionally;[8] and Ms. Steinle—an innocent bystander with no connection to ICE, the BLM ranger, the

17  thief, or Mr. Lopez-Sanchez—had to be killed as a result.

18      Under these circumstances, there were a number of independent and superseding causes that bar

19  any liability arising from ICE's conduct.  *See Schrimsher v. Bryson*, 58 Cal. App. 3d 660, 664 (1976)

20  (stating that superseding causes are those independent intervening acts that are "highly unusual or

21  extraordinary, not reasonably likely to happen").  Under California law,

22          "'Where, subsequent to the defendant's negligent act, an independent
            intervening force actively operates to produce the injury, the chain of
23          causation may be broken.  It is usually said that if the risk of injury might
            have been reasonably foreseen, the defendant is liable, but that if the
24          independent intervening act is highly unusual or extraordinary, not
            reasonably likely to happen and hence not foreseeable, it is a superseding

25

26  [8] Although not yet before the Court on the basis of plaintiffs' pleaded allegations, there may be a
    question regarding whether Mr. Lopez-Sanchez intentionally killed Ms. Steinle or whether her death
27  was the result of Mr. Lopez-Sanchez's criminal negligence or recklessness.  *See* "Bullet That Killed
    Kate Steinle In SF Pier Shooting Appears To Have Ricocheted," Aug. 26, 2015, available at
28  http://sanfrancisco.cbslocal.com/2015/08/26/ballistics-expert-bullet-that-killed-kate-steinle-appears-to-
    have-ricocheted.

1   cause, and the defendant is not liable.'"

2   *Res-Care Inc. v. Roto-Rooter Servs. Co.*, 753 F.Supp.2d 970, 982 (N.D. Cal. 2010) (quoting 6 Witkin,

3   Summary of California Law, § 1197 (10th ed. 2005)).  While there is no blanket rule in California as to

4   whether criminal conduct constitutes a superseding cause, "[c]riminal conduct which causes injury will

5   ordinarily be deemed the proximate cause of an injury, superseding any prior negligence which might

6   otherwise be deemed a contributing cause."  *Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp.

7   3d 982, 996 (E.D. Cal. 2015) (quoting *Koepke v. Loo*, 18 Cal. App. 4th 1444, 1449 (1993)).

8        The independent acts that caused the death of Ms. Steinle—including the vehicular break-in and

9   theft of the firearm and Mr. Lopez-Sanchez's discharge of a gun resulting in Ms. Steinle's death more

10  than two-and-a-half months after his release from SFSD custody—were not the likely or reasonably

11  foreseeable consequence of ICE's conduct.  In particular, the gun theft and subsequent violent crime

12  were not reasonably foreseeable from Mr. Lopez-Sanchez's criminal history related to drug trafficking.

13  *See Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003) (finding sexual assault not foreseeable

14  based on criminal history including a drug trafficking conviction).  Mr. Lopez-Sanchez's record includes

15  drug-related convictions, but no crimes of violence.  (Compl. ¶ 21.)  Accordingly, the theft of the gun

16  and Mr. Lopez-Sanchez's conduct constitute superseding causes that bar any negligence claim against

17  ICE.  *See Powell v. Standard Brands Paint Co.*, 166 Cal. App. 3d 357, 364 (1985) ("Whether the act of

18  the third person is a superseding cause depends in part on whether it (and plaintiff's injury) was

19  reasonably foreseeable.");  *Schrimsher*, 58 Cal. App. 3d at 664 (stating that superseding causes are those

20  independent intervening acts that are "highly unusual or extraordinary, not reasonably likely to

21  happen").

22  **II.    Plaintiffs' claims related to the conduct of a BLM ranger should be dismissed.**

23        Plaintiffs' negligence claim based on the theft of a handgun from a BLM ranger fails for a

24  number of the same reasons that plaintiffs' negligence claim against ICE fails:  FTCA liability cannot be

25  premised on alleged violations of federal law; and under California law, the United States is not liable in

26  negligence for crimes committed with a stolen firearm under the circumstances alleged here.

27

28

## A. Defendant United States has not waived sovereign immunity under the FTCA for alleged violations of federal statutory or regulatory duties.

Plaintiffs allege that the BLM ranger whose firearm was stolen acted in non-compliance with the "BLM's Manual Handbook 1112-2 on Safety and Health for Field Operations." (*See* Compl. ¶¶ 43-44; 55-57; 75-79.)  Plaintiffs argue that the BLM ranger "failed to carry out his/her mandatory duties" set forth in the "BLM's Manual Handbook 1112-2," and that this conduct "allowed" Mr. Lopez-Sanchez to "gain access to a loaded weapon." (*See id.* at ¶¶ 79-81.)  Specifically, plaintiffs allege that it was a violation of federal "mandatory duties" when the BLM ranger allegedly failed to properly secure and store the firearm; did not carry the firearm; left it loaded; and transported the firearm in his car. (*See id.* ¶ 79.)

As discussed above, the FTCA provides a remedy for violations of state, not federal law.  *See, e.g.*, *Jachetta v. United States*, 653. F.3d 898, 904 (9th Cir. 2011); *Dugard*, No. 11–cv–04718–CTB, 2013 WL 6228625, at *3 ("Failure of a duty to perform mandatory federal functions does not itself give rise to a FTCA claim; rather, the source of substantive liability, under the FTCA, is law of the state in which the cause of action accrued.") (citations omitted).  Accordingly, plaintiffs cannot premise their FTCA negligence claim on purported violations of federal duties.[9]

## B. Plaintiffs have failed to show duty or causation under California law with respect to the stolen firearm.

Plaintiffs allege negligence on the theory that the United States is liable for any crimes committed with the firearm stolen from the BLM ranger's car.  California recognizes liability for the negligent storage of a firearm, although the circumstances giving rise to such liability are not present here.  *See, e.g.*, *Reida v. Lund*, 18 Cal. App. 3d 698, 704 (2d Dist. 1971) (reversing grant of summary judgment for defendant finding that plaintiff had stated cause of action for negligent safeguard of a firearm where parents failed to keep a firearm out of child's possession and child killed others and himself).[10]  More generally, California law requires gun owners to exercise a high degree of care.  *See*

---

[9] In fact, plaintiffs' allegations are incorrect:  the BLM ranger's conduct was reviewed, and he was not found to have violated BLM rules or policies in place at the time of the theft were violated.

[10] California state law and local ordinances also address the storage of firearms.  *See, e.g.*, Cal Penal Code § 25610; *Jackson v. City & County of San Francisco*, No. C 09-2143 RS, 2012 WL 3580525, at *1 (N.D. Cal. Aug. 17, 2012) (upholding a San Francisco ordinance requiring handguns that are "not under direct, personal control" within the home to have trigger locks or be stored in locked containers).

*Warner v. Santa Catalina Island Co.*, 44 Cal.2d 310, 317 (1955) ("In other words, the standard of care required of the reasonable person when dealing with such dangerous articles [including firearms] is so great that a slight deviation therefrom will constitute negligence."); *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 116 (1992) (same).

Courts have generally rejected claims that a gun owner is liable for crimes committed with a stolen firearm. *See, e.g.*, *Jones v. Secord*, 684 F.3d 1, 3-4 (1st Cir. 2012) (affirming summary judgment to gun owner in action alleging negligence in failing to properly secure gun and timely report its theft by his grandson who used it to kill three people); *Bridges v. Parrish*, 742 S.E.2d 794, 796 (N.C. 2013) (affirming dismissal of action and holding parents of adult son not liable for negligently storing handgun when son retrieved the gun from their home and used it to shoot his girlfriend); *Finocchio v. Mahler*, 37 S.W.3d 300, 303-304 (Mo. Ct. App. 5th Dist., 2000) (affirming summary judgment in favor of gun owner on grounds that storage of firearm and ammunition in unlocked drawers was not the proximate cause of death of girl following theft and reckless discharge of firearm); *Valentine v. On Target, Inc.*, 727 A.2d 947, 952-53 (Md. 1999) (affirming motion to dismiss claims against retailer and finding no duty to victim who was shot and killed by unknown assailant who used gun stolen from retailer); *McGrane v. Cline*, 973 P.2d 1092, 1094-95 (Wash. 1999) (affirming summary judgment in favor of gun owner and refusing to impose potential negligence liability "based solely upon factors of ownership, theft, and subsequent criminal use of a firearm"); *Estate of Strever v. Cline*, 278 Mont. 165, 179 (1996) (affirming summary judgment for gun owner on the grounds that there was no proximate cause because chain of causation, involving two criminal acts and one grossly negligent act, was so thin as to preclude liability of the defendant car owner); *Romero v. Nat'l Rifle Ass'n of Am., Inc*, 749 F.2d 77, 80-81 (D.C. Cir. 1984) (affirming judgment n.o.v. on grounds that intervening criminal acts rendered defendant not liable for death caused with stolen gun). *But see Gallara v. Koskovich*, 836 A.2d 840, 852-856 (N.J. Super. 2003) (denying summary judgment on grounds that retailer had duty to adequately safeguard inventory of firearms from theft and issue of proximate cause related to use of stolen guns in crime was issue for jury). There are no facts alleged in this case that would place it outside the general rule.

Courts have rejected gun owner negligence liability on two principal grounds. First, courts have rejected liability on the grounds that a gun owner does not owe a duty to a third party injured by the use

of a stolen firearm.  *See, e.g.*, *Jones*, 684 F.3d at 3-4; *Bridges*, 742 S.E.2d at 796; *Valentine*, 727 A.2d at 952-53; *McGrane*, 973 P.2d at 1094-95.  Second, courts have rejected liability on the grounds that the gun owner's negligence was not the proximate cause of any injury caused by a third party with the stolen firearm.  *See, e.g.*, *Finocchio*, 37 S.W.3d at 303-304; *Estate of Strever*, 924 P.2d at 668.  Both grounds are impediments to liability here.

First, with respect to duty, the issue in this case is whether there was a duty on the part of the BLM ranger with respect to the criminal act committed by a third party—Mr. Lopez-Sanchez—using the ranger's stolen gun.  Under California law, one owes no duty to control the conduct of a third person to prevent him or her from causing physical harm to another, absent a special relationship between the defendant and either the person whose conduct needs to be controlled or the foreseeable victim of that conduct.  *E.g., Richards v. Stanley*, 43 Cal.2d 60, 65 (1954); *Megeff v. Doland,* 123 Cal. App. 3d 251, 257 (1981).  Plaintiffs have not alleged any "special relationship" between the federal defendant and Ms. Steinle or Mr. Lopez-Sanchez; accordingly, no duty arises under this formulation of the rule.

In addition to the "special relationship" test, the California Supreme Court has applied a "special circumstances" test in evaluating whether a duty exists to prevent harm to the general public by another's reasonably foreseeable criminal conduct.  For example, "[i]n California the owner of a motor vehicle is under no duty to a person injured by a thief's operation of a stolen vehicle absent 'special circumstances' effecting the foreseeability of the theft and the thief's negligent operation of the vehicle."  *Hosking v. Robles*, 98 Cal. App. 3d 98, 102 (1979); *see also Richards*, 43 Cal.2d at 65 (By leaving the key in her car [defendant] at most increased the risk that it might be stolen. … [W]e conclude that her duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from the negligent driving of a thief.").  Similarly, in *Palma v. U.S. Industrial Fasteners, Inc.*, the court held that a vehicle owner may owe a duty to a third-party victim of a stolen vehicle where there were "special circumstances" that created a "foreseeable risk of harm that was unreasonable."  36 Cal.3d 171, 184 (1984).  In determining whether such a duty exists, the court must consider a number of factors including "'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of

1    preventing future harm, the extent of the burden to the defendant and consequences to the community of

2    imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

3    prevalence of insurance for the risk involved." *Id.* (citation omitted).  Presumably this "special

4    circumstances" test also applies in the context of firearm possession and storage.

5         The circumstances alleged here do not establish an unreasonable risk of a foreseeable harm.  *See*

6    *Palma*, 36 Cal.3d at 184.  Plaintiffs allege that on June 27, 2015, a BLM ranger left a loaded firearm in a

7    backpack in a locked car that was parked unattended "in the downtown area of San Francisco."  (Compl.

8    ¶ 44.)  Plaintiffs further allege that the backpack was left "in plain sight of passerby's and within reach

9    of someone smashing a window of the vehicle."  (*Id*.)  The firearm inside the backpack (and presumably

10   the backpack) was stolen from the vehicle, and four days later Mr. Lopez-Sanchez used the stolen

11   firearm and killed Ms. Steinle.  (*Id*.)  These circumstances are different than those in *Palma*, where the

12   stolen vehicle was left unlocked overnight; here, the firearm was locked in the car and inside a backpack

13   where the gun was not visible to passersby.  *See Palma*, 36 Cal.3d at 186.  The alleged circumstances

14   are also different than those in *Reida v. Lund*, where a firearm and ammunition were left "in a place

15   accessible to [the defendant's] children," which "raise[d] a triable question of fact" regarding whether

16   that was "a proper exercise of due care or whether it amounted to negligent safeguard of a deadly

17   weapon."  18 Cal. App. 3d at 707.  In this case, again the firearm was not visible to any passersby, nor

18   was it accessible to any third party unless he or she "smash[ed] a window of the vehicle."  (Compl.

19   ¶ 44.)

20        The alleged circumstances are also different than those in *Estate of Strever v. Cline*, where the

21   Supreme Court of Montana found that a gun owner did have a duty with respect to a firearm that was

22   stolen from his pickup truck.  *Estate of Strever*, like this case, involved a death from the use of a firearm

23   that had been stolen from the defendant's vehicle.  278 Mont. 165.  In *Estate of Strever*, the defendant

24   "stor[ed] his gun and ammunition in an unlocked vehicle on a public street with numerous other items of

25   attractive personal property in plain view easily accessible to thieves or simply to curious small

26   children."  278 Mont. at 173.  Children ended up stealing the defendant's gun, and, while handling the

27   gun, one of the children was shot and killed.  The court stated that "reasonable minds could attach moral

28   blame" to this conduct and held that under Montana state law the defendant "owed a legal duty to the

general public to store his firearm and ammunition" in a "safe and prudent manner taking into consideration the type of firearm, whether it is loaded or unloaded, whether the ammunition is in close proximity or easily attainable, and the location and circumstances of its use and storage." *Id.* at 174-175.  Unlike *Estate of Strever*, where the defendant's pickup truck was left unlocked on the street overnight, here the BLM ranger's car was locked, which was a more reasonable impediment to potential thieves or "curious" passersby.  Additionally, the death in *Estate of Strever* resulted when one of the thieves mishandled the stolen gun immediately following the theft.  Mr. Lopez-Sanchez killed Ms. Steinle days after the theft; and Mr. Lopez-Sanchez may not have been involved in the break-in and theft of the firearm.

Second, with respect to causation, the BLM ranger's alleged conduct was not the proximate cause of Ms. Steinle's death, whether or not the ranger was in breach of any duty by leaving the firearm in his locked car.  There were at least two and perhaps three intervening criminal acts:  the break-in and theft from the ranger's vehicle; the transfer of the stolen gun to Mr. Lopez-Sanchez (if he was not the thief); and the discharge of the gun by Mr. Lopez-Sanchez four days later.  This sequence of events was not the reasonably foreseeable consequence of leaving the firearm in a backpack in the BLM ranger's locked car.  *See Powell*, 166 Cal. App. 3d at 364.

The court in *Estate of Strever* reached a similar result (albeit under Montana law).  In that case, the court found that there were "two intervening criminal acts (two thefts from [defendant's] vehicle)" and "an intervening grossly negligent act"—one of the thieves, "high on marijuana, wav[ed] the stolen gun around with his finger on the trigger, [and] then tr[ied] to unload the weapon."  278 Mont. at 179. On those facts, the court concluded that "reasonable minds could come to but one conclusion—that the series of intervening acts which included two criminal acts and one grossly negligent act was reasonably unforeseeable and, thereby, cut off all liability on the part of [defendant] for Robert Strever's unfortunate death."  *Id*.  Ms. Steinle's unfortunate and tragic death was similarly the result of a series of unforeseen criminal acts, and accordingly the claims against the United States should be dismissed.

//

//

//

1

## CONCLUSION

2          For the reasons set forth above, the Court should dismiss with prejudice all of plaintiffs' claims

3   against defendant United States of America.

4          Dated:  September 12, 2015                    BRIAN J. STRETCH
                                                         United States Attorney
5

6                                                         _/s/ Robin M. Wall_____
7                                                         ROBIN M. WALL
                                                         Assistant United States Attorney
8                                                         Attorneys for Defendant
                                                         United States of America
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**[PROPOSED] ORDER**

2      Having considered Defendant United States of America's motion to dismiss, the parties' briefs,

3 and oral argument on the motion, and the pleadings and other papers on file in this action, the Court

4 hereby GRANTS the Defendant's motion to dismiss Plaintiffs' claims against the United States without

5 leave to amend.

6      SO ORDERED

7      Dated: _____, 2016

8                                    HON. JOSEPH C. SPERO
                                      United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28