United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES STEINLE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 16-cv-02859-JCS<br><br>**ORDER GRANTING MOTION FOR ENTRY OF PARTIAL JUDGMENT**<br><br>Re: Dkt. No. 60 |

## I. INTRODUCTION

Plaintiffs James Steinle and Elizabeth Sullivan brought this action against the United States, the City and County of San Francisco ("San Francisco" or the "City"), and former San Francisco Sheriff Ross Mirkarimi, asserting claims related to the shooting death of their daughter Kathryn Steinle ("Steinle"). Plaintiffs initially also named Juan Francisco Lopez-Sanchez—who allegedly shot Steinle—as a defendant, but voluntarily dismissed their claims against him without prejudice. Defendants moved to dismiss, and on January 6, 2017, the Court dismissed with prejudice all claims against the City and Mirkarimi (collectively, the "City Defendants"), as well as claims against the United States based on its failure to detain or deport Lopez-Sanchez before the shooting. *See* Order Regarding Mots. to Dismiss ("Dismissal Order," dkt. 48).[1] The Court declined to dismiss claims against the United States based a federal Bureau of Land Management ("BLM") ranger's alleged failure to properly secure the handgun that Lopez-Sanchez allegedly used to shoot Steinle.

Plaintiffs now move for entry of final judgment on the dismissed claims pursuant to Rule

---

[1] *Steinle v. City & Cty. of San Francisco*, __ F. Supp. 3d __, No. 16-cv-02859-JCS, 2017 WL 67064 (N.D. Cal. Jan. 6, 2017). Citations herein to page numbers in that previous order refer to the version filed in the Court's ECF docket.

54(b) of the Federal Rules of Civil Procedure or, in the alternative, certification of the previous order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The City Defendants oppose Plaintiffs' motion in its entirety. The United States does not oppose entry of judgment, but opposes the alternative request for certification. The Court took the matter under submission and vacated the hearing previously set for May 12, 2017. *See* Civ. L.R. 7-1(b). For the reasons discussed below, Plaintiffs' motion for entry of judgment is GRANTED, and judgment will be entered against Plaintiffs on the claims previously dismissed with prejudice.[2] The Court does not reach Plaintiffs' alternative request for certification of interlocutory appeal.

## II. BACKGROUND

### A. Previous Order

Although Plaintiffs delineated their claims somewhat differently in their complaint, the parties' arguments and the Court's previous order on the motions to dismiss addressed the following theories of liability: negligence per se, general negligence, and deprivation of civil rights under 42 U.S.C. § 1983 with respect to the City Defendants' promulgation and execution of a policy strictly limiting cooperation with federal immigration enforcement authorities; and claims under the Federal Tort Claims Act ("FTCA") against the United States, including both the theory that Immigration and Customs Enforcement ("ICE") negligently failed to apprehend Lopez-Sanchez and the theory that the BLM ranger negligently failed to secure a handgun that was stolen from his vehicle and used to shoot Steinle four days later. *See* Dismissal Order at 4−5, 16, 34, 40.

Beginning with Plaintiffs' negligence per se theory against the City Defendants, the Court held that none of the statutes on which Plaintiffs relied barred the City Defendants from establishing a policy that generally prohibited San Francisco Sheriff's Department personnel either continuing to hold a detainee based on a request from federal immigration authorities or sharing a detainee's release date with federal immigration authorities. *Id.* at 16−25. The Court held that 8 U.S.C. § 1373(a) prohibits only restrictions on sharing "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," as stated in the plain language of that

---

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

2

statute, and does not implicate restrictions on honoring detainer requests or sharing release dates. *Id.* at 18−20 (determining that looking beyond the plain language of the statute would be improper, citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005); *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 684−85 (9th Cir. 2007)). The Court also held that § 1373(a) was not intended to prevent violent crime, as would be necessary for Plaintiffs' claim under California law. *Id.* at 20−21. As for the state statutes on which Plaintiffs relied, the Court held that California Health and Safety Code section 11369 did not support a claim (1) because the Sheriff's Department was not the "arresting agency," (2) because notifying federal authorities of Lopez-Sachez's "arrest" or immigration status would not have prevented harm to Steinle, and (3) because section 11369 was not intended to prevent violent crime. The court also held that California Government Code section 7282.5(a) did not support a claim because it only grants law enforcement officials discretion to cooperate with federal immigration agencies when such cooperation would not violate a local policy, and the City Defendants therefore retained authority to set policies limiting such cooperation. *Id.* at 21−23. With respect to local law, the Court held that although chapter 12H of the San Francisco Administrative Code did not require Mirkarimi to limit cooperation as stringently as he did, it did not prohibit such limitations. *Id.* at 23−25.

Turning to Plaintiffs' general negligence claim against the City Defendants, which was based on Mirkarimi's alleged negligence in implementing the policy of limited cooperation and the City's alleged vicarious liability for such negligence, the Court held that Mirkarimi was immune under section 820.2 of the Government Code because establishing the policy was discretionary act. The Court also held that the City was therefore immune under section 815.2 of the Government Code. *Id.* at 25−28. Finally, with respect to Plaintiffs' claim under § 1983 for deprivation of life and liberty without due process of law, the Court held that Plaintiffs did not state a claim on either a substantive or procedural due process theory, primarily because any foreseeable risks arising from Mirkarimi's policy and Lopez-Sanchez's release were not particularized to Steinle. *Id.* at 28−33.

As for Plaintiffs' claims against the United States, the Court held that Plaintiffs could not

3

proceed based on conduct by ICE because decisions of when and how to apprehend removable aliens fall within the discretionary function exception to the FTCA. *Id.* at 34−40. The Court allowed Plaintiffs' FTCA negligence claim to proceed based on the BLM ranger's alleged failure to properly secure his handgun, however, relying primarily on a line of California court decisions addressing liability for harm caused by stolen vehicles. *Id.* at 40−47. The Court dismissed with leave to amend Plaintiffs' negligence per se theory for failure to identify a statute, ordinance, or regulation establishing a relevant duty. *Id.* at 47−49. Plaintiffs declined to amend their complaint to pursue that theory.

### B. Arguments on the Present Motion

Plaintiffs ask the Court to enter final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure on the claims dismissed with prejudice by the previous order or, in the alternative, to certify that order for interlocutory appeal pursuant to 28 U.S.C § 1292(b). *See generally* Mot. (dkt. 60). Because the Court finds entry of judgment appropriate under Rule 54(b), this order does not recount the parties' arguments regarding § 1292(b).

#### 1. Plaintiffs' Motion

Plaintiffs contend that entry of judgment is appropriate because "the relationship between the adjudicated and unadjudicated claims is by causal chain and damages only," and "there is . . . no risk that the reviewing court will be obliged to consider the same issue a second time or that review might be mooted by future developments in this Court (other than a final judgment ruling that [the BLM ranger's] negligence did not cause [Steinle's] death.)" Mot. at 7 (punctuation as in original). Plaintiffs argue that they would be prejudiced by waiting to appeal because the case has already been delayed for other reasons—although they do not elaborate on the nature of such prejudice—and that entry of judgment would promote efficiency because if Plaintiffs prevail on appeal, all claims could be adjudicated in a single trial, avoiding duplicative proceedings on the overlapping issues of causation and damages. *Id.* at 7−8. Plaintiffs also assert that entry of judgment now would benefit the City Defendants by reducing overlapping burdens of participating in discovery as a non-party to the ongoing claim against the United States and then defending claims against them in later proceedings if Plaintiffs prevail on appeal in the usual

4

course, after a final judgment on all claims. *Id.* at 8.

### 2. Defendants' Responses

The City Defendants argue that separate judgment is not warranted because "[a]n order on summary judgment will likely moot any claims against [them]." City Opp'n (dkt. 64) at 2. According to the City Defendants, all claims rely on "interlocking facts" with respect to causation, and partial judgment is not appropriate under such circumstances. *Id.* at 3 (citing *Wood v. GCC Bend, LLC*, 422 F.3d 873 (9th Cir. 2005)). They contend that the causal chain is attenuated between Steinle's death and the theft of the BLM ranger's handgun, and that the connection to the City Defendants' actions is even more attenuated because those actions preceded the theft by months. *Id.* The City Defendants also argue that an appellate decision on the claims against them would provide no benefit to the adjudication of the remaining claim against the United States. *Id.* at 4.

The United States does not oppose entry of judgment pursuant to Rule 54(b), although it opposes certification under § 1292(b), for reasons that are not relevant to this order. *See generally* U.S. Response (dkt. 65).

### 3. Plaintiffs' Reply

Plaintiffs argue that *Wood*, on which the City Defendants rely, is distinguishable from the case at hand because that was a "routine" and "straightforward case" where the claims at issue were two theories of liability based on the same operative facts: wrongful demotion and constructive termination, both based on alleged age discrimination and retaliation. Reply (dkt. 66) at 1−2; *see Wood*, 422 F.3d 879−80. According to Plaintiffs, the case at hand is not routine or straightforward, and unlike in *Wood*, the facts of all claims do not "'entirely overlap.'" Reply at 2 (quoting *Wood*, 422 F.3d at 883). Even on the issue of causation—which Plaintiffs note the Court did not decide in its previous order and which they argue is generally a question of fact for the jury—Plaintiffs contend that the dismissed claims do not necessarily overlap with the ongoing claim, because the analysis of whether harm was foreseeable as a result of releasing or failing to detain Lopez-Sanchez differs from whether harm was foreseeable as a result of leaving the handgun unattended. *Id.* at 2−3.

5

1  **III.   ANALYSIS**

2     Rule 54(b) allows a district court to direct entry of final judgment as to one or more of the

3 claims while others remain pending if the court expressly determines that there is no just reason

4 for delay. *See* Fed. R. Civ. P. 54(b). The Supreme Court has established a two-step process for

5 district courts to determine whether entry of judgment on a claim under Rule 54(b) is warranted.

6 *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7–8 (1980). First, the judgment must

7 be final with respect to one or more claims. *See id.* A district court's judgment is final where it

8 "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."

9 *Catlin v. United States*, 324 U.S. 229, 233 (1945). Second, "the district court must go on to

10 determine whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8.

> "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" *Id.* at 8, 100 S.Ct. 1460 (quoting [*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956)]). Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests "is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* (quoting *Mackey*, 351 U.S. at 438, 76 S.Ct. 895).

17 *Wood*, 422 F.3d at 878. The Ninth Circuit has endorsed a "'pragmatic approach focusing on

18 severability and efficient judicial administration.'" *Id.* at 880 (quoting *Cont'l Airlines, Inc. v.*

19 *Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987)).

20     In this case, there is no dispute that the Court's previous order "end[ed] the litigation on

21 the merits" of the claims dismissed with prejudice. *See Catlin*, 324 U.S. at 233. The question is

22 whether there is just reason to delay entry of judgment and Plaintiffs' appeal. The Court

23 concludes that there is not.

24     As a starting point, the issues actually determined with respect to the claims dismissed with

25 prejudice by the previous order have no bearing on Plaintiffs' remaining FTCA claim based on the

26 stolen handgun. This Court will have no occasion in the ongoing litigation to revisit the issues

27 that Plaintiffs now wish to appeal, such as the interpretation of § 1373(a), and neither Plaintiffs

28 nor the United States would have reason to raise those issues in a second appeal after final

6

adjudication of the remaining claim based on the BLM ranger's alleged negligence. Accordingly, although granting Plaintiffs' motion might give rise to separate appeals of the dismissed claims now and of the remaining claim later, they would not be "piecemeal appeals" of related issues best considered together. *Cf. Wood*, 422 F.3d at 880 (finding that a district court erred in granting a Rule 54(b) motion where the plaintiff's "legal right to relief stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts"). Granting Plaintiffs' motion risks little if any "chance that [the Ninth Circuit] will have to revisit the same facts—spun only slightly differently—in a successive appeal." *Cf. id.* at 882.

The Court is also not persuaded by the City Defendants' argument that further proceedings on the remaining claim are likely to moot an appeal of the dismissed claims, much less that such a result is likely on summary judgment. *See* City Opp'n at 2−3. The Court allowed the remaining claim to proceed because the allegations of the complaint are sufficient to state a claim. With no factual record yet available, there is no basis at this time to determine what outcome is likely on summary judgment or at trial, and if Plaintiffs prevail on their remaining claim, the appeal would likely be unaffected. If the United States prevails, it is also far from clear that such a result would moot the appeal. The United States might show, for example, that the ranger did not breach a duty of care, or that issues of immunity or jurisdiction not previously addressed bar the claim. Even if the United States succeeds in showing a lack of proximate cause, that would not end the inquiry. As Plaintiffs note in their reply, the qualitative question of foreseeability differs with respect to the immigration enforcement claims and the firearm negligence claims—a determination that it was not foreseeable that an unsecured gun would be used in a fatal shooting would not in itself resolve the question of whether it was foreseeable that Lopez-Sanchez would commit such a shooting if not detained or deported.

The Ninth Circuit made clear in *Wood* that it did "not mean to suggest that claims with overlapping facts are foreclosed from being separate for purposes of Rule 54(b). Certainly they are not." *Wood*, 422 F.3d at 881; *see also, e.g.*, *Gregorian v. Izvestia*, 871 F.2d 1515, 1520 (9th Cir. 1989) (endorsing a district court's entry of partial judgment despite some relationship

between the dismissed and ongoing claims); *Cont'l Airlines*, 819 F.2d at 1525 (same). Here, the Court finds that the dismissed and remaining claims turn on sufficiently separate legal and factual issues to warrant a separate judgment under Rule 54(b). The parties' procedural interests, including a prompt resolution of Plaintiffs' claims and certainty as to whether the City Defendants might be subject to liability for events already years in the past, favor judgment and early appeal of the dismissed claims. In the event that Plaintiffs prevail,[3] entering separate judgment to allow appeal of the dismissed claims might advance judicial efficiency by allowing a single trial if the appellate court remands those claims before final adjudication of the remaining FTCA claim. The United States does not oppose entry of judgment, and the City Defendants have not identified any prejudice that they would face as a result. Accordingly, as a matter of this Court's discretion, Plaintiffs' motion for entry of final judgment on all claims dismissed with prejudice by the previous order is GRANTED.

## IV.     CONCLUSION

For the reasons discussed above, Plaintiffs' motion for entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is GRANTED. The Clerk is instructed to enter judgment in favor of Defendants Ross Mirkarimi and the City and County of San Francisco on all claims against them, and to enter judgment in favor of the United States on all claims based on the conduct of Immigration and Customs Enforcement. This order has no effect on Plaintiffs' remaining FTCA negligence claim against the United States, or on any deadlines previously established for the litigation of that claim.

**IT IS SO ORDERED.**

Dated: May 12, 2017

JOSEPH C. SPERO
Chief Magistrate Judge

---

[3] Unlike analysis of a motion for interlocutory appeal under § 1292(b), the Rule 54(b) test does not require this Court to consider whether there are substantial grounds for a difference of opinion, and the Court declines to speculate as to Plaintiffs' likelihood of success. The Court notes, however, that with respect to the only holding of the previous order specifically addressed in Plaintiffs' briefs—that § 1373(a) does not govern restrictions on compliance with detainer requests or sharing release dates—Plaintiffs do not address the authority on which the Court relied discussing the limited circumstances where a court may look beyond the plain language of a statute to examine legislative history. *See* Mot. at 8−18; Reply at 3−5.