**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES STEINLE, individually and as heir to Kathryn Steinle, deceased; ELIZABETH SULLIVAN, individually and as heir to Kathryn Steinle, deceased, | No. 17-16283 |
| | D.C. No. 3:16-cv-02859-JCS |
| *Plaintiffs-Appellants*, | |
| v. | OPINION |
| CITY AND COUNTY OF SAN FRANCISCO, a government entity; JUAN FRANCISCO LOPEZ-SANCHEZ; ROSS MIRKARIMI; UNITED STATES OF AMERICA, | |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted November 15, 2018
San Francisco, California

Filed March 25, 2019

Before:  Susan P. Graber, Stephanie Dawn Thacker,[*]
and Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett;
Concurrence by Judge Graber

### SUMMARY[**]

### California Law / Immunity

The panel affirmed the district court's dismissal of the general negligence claim brought by the parents of Kathryn Steinle against the City and County of San Francisco after Kathryn was shot and killed by an undocumented alien with a criminal record, who was released from custody by the San Francisco's Sheriff's Department.

On March 13, 2015, the San Francisco Sheriff issued a Memo establishing protocols and parameters for communications between Sheriff's Department employees and Immigration and Customs Enforcement ("ICE") representatives.  On March 27, 2015, ICE sent a detainer request asking the Sheriff's Department to notify ICE before releasing undocumented alien, Juan Francisco Lopez-Sanchez, and to hold him until ICE could take custody of him. The Sheriff's Department released Lopez-Sanchez on

---

[*] The Honorable Stephanie Dawn Thacker, Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

April 15, 2015, without notification to ICE.  On July 1, 2015, Lopez-Sanchez shot and killed Steinle near Pier 41 of the San Francisco Embarcadero.

The Panel held that the Sheriff's issuance of the Memo was a discretionary act that was entitled to immunity under California Government Code section 820.2.   The panel further held that the district court did not err in determining immunity on a motion to dismiss.

The panel rejected plaintiffs' argument that the district court improperly took judicial notice of the Memo's contents.   The panel held that the district court properly considered the Memo under the incorporation by reference doctrine, where the Memo formed the very basis of plaintiffs' claims and plaintiffs referred extensively to the Memo throughout district court proceedings.

The panel rejected plaintiffs' arguments that the Sheriff lacked discretionary authority to issue the Memo, and therefore, was not entitled to immunity. Specifically, the panel held that although 8 U.S.C. §§ 1373(a) and 1644 prohibit restrictions on providing certain types of information to ICE, they plainly and unambiguously do not prohibit the restriction at issue in this case regarding release-date information. The panel further held that, assuming the Sheriff's actions adversely affected ICE's ability to do its job, this did not, without more, strip him of the discretionary authority under California law to institute the policy that he did.   The panel also rejected plaintiffs' argument that the Memo was a legislative act that deprived the Sheriff of immunity.   The panel held that the Sheriff's failure to provide ICE with the inmate release date information did not violate the California Public Records Act.  The panel also held that the district court correctly held that California

Health and Safety Code section 11369 was inapplicable because the Sheriff's Department was not the "arresting agency," and plaintiffs' allegations failed to demonstrate any violation of section 11369. Finally, the panel rejected plaintiffs' claim that other local laws prohibited the Sheriff from limiting cooperation with ICE.

Judge Graber concurred in the opinion which relied on the general discretionary-immunity statute, California Government Code section 820.2, but wrote separately to add that the California legislature has provided an even clearer, specific grant of immunity to defendants in the present circumstances in California Government Code sections 845.8(a) and 846.

---

## COUNSEL

Alison E. Cordova (argued) and Frank M. Pitre, Cotchett Pitre & McCarthy LLP, Burlingame, California, for Plaintiffs-Appellants.

Margaret W. Baumgartner (argued), Deputy City Attorney; Cheryl Adams, Chief Trial Deputy; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendants-Appellees.

---

## OPINION

BENNETT, Circuit Judge:

The facts of this case are undeniably tragic. Kathryn Steinle ("Steinle"), a 32-year-old woman, was shot and killed by Juan Francisco Lopez-Sanchez, an undocumented alien with a criminal record, after he was released from custody by the San Francisco Sheriff's Department. In this appeal, Steinle's parents, James Steinle and Elizabeth Sullivan ("Plaintiffs"), challenge the district court's dismissal of their general negligence claim against the City and County of San Francisco and Sheriff Ross Mirkarimi (collectively, "City Defendants"). While we deeply sympathize with Steinle's family, the question of discretionary immunity raised in this case is controlled by California law. After careful deliberation, we conclude that California law bars Plaintiffs' negligence claim. Accordingly, we affirm the decision of the district court.

## FACTS AND PROCEDURAL HISTORY[1]

In February 2015, then San Francisco Sheriff Mirkarimi, through a meeting with the U.S. Department of Homeland Security Deputy Director, informed the United States that the Sheriff's Department would not honor Immigration and Customs Enforcement ("ICE") detainer requests or notify ICE of the pending release of any undocumented alien unless a judicial order or warrant was issued for the alien's removal. Shortly thereafter, Sheriff Mirkarimi issued a memorandum,

---

[1] The following facts are taken from Plaintiffs' complaint and are assumed true for purposes of our review. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

dated March 13, 2015 (the "Memo") to all Sheriff's Department employees.

The Memo established protocols and parameters for communications between Sheriff's Department employees and ICE representatives.  It stated that employees "shall not provide" "non-public" information to ICE, including "release dates or times," but that employees were authorized to provide certain "public" information to ICE.  Disclosure of any information beyond the public information explicitly authorized by the Memo would require consultation with the Sheriff's Department's legal counsel, confirmation by counsel that disclosure was required by court order or law, and authorization by Sheriff Mirkarimi.[2]  The Memo changed the "longstanding policy and procedure" of the Sheriff's Department "to freely provide information to ICE regarding undocumented immigrant felons in custody."

The Memo referenced Chapter 12H of the San Francisco Administrative Code, which is commonly referred to as the "Sanctuary City Law," and other relevant laws and regulations, including the California Public Records Act and the San Francisco Sunshine Ordinance of 1999.  While the Sanctuary City Law limits information that San Francisco and its officers and employees share with federal immigration officials, it includes an exception for cooperation as required by state or federal law.  It also allows, but does not require, communication and

---

[2] Plaintiffs characterize the Memo as a "no contact" policy.  This label is not precisely accurate because, as noted, the Memo authorized Sheriff's Department employees to provide certain public information to ICE.  The Memo also allowed other information to be provided to ICE if its request was supported or required by a warrant, court order or decision, or federal or state statute or regulation, and was confirmed by the Sheriff's counsel and approved by the Sheriff.

cooperation with federal authorities regarding individuals previously convicted of felonies. The Memo, however, contained no exception regarding individuals previously convicted of felonies.

From 1993 to 2011, Lopez-Sanchez was convicted of "at least seven felonies" related either to controlled substances or to illegal reentry after deportation. He also was removed to Mexico at least five times during that time period. After completing a 46-month sentence in federal prison, Lopez-Sanchez was released to the custody of the Sheriff's Department on March 26, 2015, to face felony charges for selling marijuana. The charges against him were dropped on March 27, 2015, and on that same day, ICE sent a detainer request asking the Sheriff's Department to notify ICE 48 hours before releasing Lopez-Sanchez and to hold him until ICE could take custody of him. The Sheriff's Department did not respond to the detainer request or otherwise communicate with ICE, and Lopez-Sanchez was released on April 15, 2015, without notification to ICE. After his release, Lopez-Sanchez acquired a government-issued handgun belonging to a U.S. Bureau of Land Management ranger. The handgun had been stolen from a vehicle on June 27, 2015.

On July 1, 2015, four days after the handgun had been stolen and approximately two and one-half months after Lopez-Sanchez had been released by the Sheriff's Department, he shot and killed Steinle near Pier 14 of the San Francisco Embarcadero. Steinle was shot "in the chest, piercing her aorta." There is no allegation that Lopez-Sanchez knew Steinle. After the shooting, ICE stated: "If the local authorities had merely notified [U.S. Immigration and Customs Enforcement] that they were about to release this individual into the community, ICE could have taken

custody of him and had him removed from the country—thus preventing this terrible tragedy."

Plaintiffs filed a complaint against the United States, City Defendants, and Lopez-Sanchez,[3] alleging claims for negligence per se, general negligence, and deprivation of civil rights under 42 U.S.C. § 1983. City Defendants and the United States moved to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6). The district court granted City Defendants' motion and granted in part and denied in part the United States's motion.[4] The claims against City Defendants were dismissed without leave to amend, based on futility.

Final judgment on the dismissed claims was entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and Plaintiffs timely appealed. On appeal, Plaintiffs challenge only the dismissal of their general negligence claim against City Defendants. The district court dismissed that claim pursuant to California Government Code sections 820.2 and 815.2(b) because it concluded that the alleged negligent act—the issuance of the Memo—was an immune discretionary act.

Plaintiffs argue that dismissal of their general negligence claim was improper because 1) the district court erred in

---

[3] Plaintiffs voluntarily dismissed all claims against Lopez-Sanchez.

[4] The district court dismissed, with prejudice, the claims against the United States premised on its failure to detain or remove Lopez-Sanchez before the shooting, but it declined to dismiss the claims against the United States premised on the ranger's alleged failure to properly secure the handgun that Lopez-Sanchez used to shoot Steinle. Plaintiffs do not appeal the district court's decision regarding their claims against the United States.

finding immunity on a motion to dismiss, 2) the district court erred by taking judicial notice of the contents of the Memo, and 3) the Sheriff's act of withholding Lopez-Sanchez's release date from ICE was ministerial and thus not entitled to discretionary immunity even if entitlement to immunity could be determined on a motion to dismiss.  Plaintiffs also make various arguments in support of their contention that Sheriff Mirkarimi lacked discretionary authority to issue the Memo and, therefore, is not entitled to immunity.

## STANDARD OF REVIEW

"We review de novo a dismissal under Rule 12(b)(6), and we can affirm on any ground supported by the record." *Thompson v. Paul*, 547 F.3d 1055, 1058–59 (9th Cir. 2008). Further, on a motion to dismiss, "[w]e take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party."  *Parks Sch. of Bus.*, 51 F.3d at 1484.

## DISCUSSION

## I.  Discretionary Immunity

We agree with the district court that the issuance of the Memo was a discretionary act that is entitled to immunity under section 820.2 of the California Government Code. Section 820.2 provides, in pertinent part: "[A] public employee is not liable for an injury resulting from his act . . . where the act . . . was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

In applying section 820.2, the California Supreme Court has stated that "the existence of some . . . alternatives . . . does not perforce lead to a holding that the governmental

unit thereby attains the status of non-liability under section 820.2." *Johnson v. State*, 447 P.2d 352, 358 (Cal. 1968). Thus, instead of interpreting "discretionary" literally, the focus should be on the policy considerations underlying the governmental entity's claim of immunity. *Id.* at 356–58.

> [A] "workable definition" of immune discretionary acts draws the line between "planning" and "operational" functions of government. Immunity is reserved for those "*basic policy decisions* which have been expressly committed to coordinate branches of government," and as to which judicial interference would thus be "unseemly." Such "areas of quasi-legislative policy-making are sufficiently sensitive" to call for judicial abstention from interference that "might even in the first instance affect the coordinate body's decision-making process[.]"

*Caldwell v. Montoya*, 897 P.2d 1320, 1325–26 (Cal. 1995) (citations, brackets, and alterations omitted) (quoting *Johnson*, 447 P.2d at 360–61). Further, a finding of immunity "requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a 'conscious balancing of risks and advantages.'" *Id.* at 1327 (brackets omitted) (quoting *Johnson*, 447 P.2d at 361 n.8).

Applying the principles established by the California Supreme Court, the Memo, on its face, reflects a basic policy decision that "has been committed to [a] coordinate branch[] of government." *Johnson*, 447 P.2d at 360. The Memo was issued by Sheriff Mirkarimi, who had the "sole and exclusive authority to keep the county jail and the prisoners in it." Cal.

Gov't Code § 26605.  And, as discussed below, no federal, state, or municipal statute or ordinance prohibited him from issuing the Memo.  Thus, Sheriff Mirkarimi was vested with the authority to establish a departmental-wide policy setting forth the parameters and protocols regarding his employees' communications with ICE.

The Memo shows that Sheriff Mirkarimi considered applicable laws and regulations, determined what information should and should not be provided to ICE, and established a process for providing information to ICE when required by law.  The allegations in the complaint also demonstrate that Sheriff Mirkarimi actually exercised discretion because, by issuing the Memo, according to Plaintiffs, he consciously changed the "longstanding policy and procedure . . . to freely provide information to ICE."

The decision concerning what information Sheriff's Department employees would provide to federal immigration officials (beyond the information required by law to be provided) is an important policy decision that is "sufficiently sensitive to justify a blanket rule that courts will not entertain a tort action."  *Johnson*, 447 P.2d at 361.  Indeed, the debate over policies that severely limit cooperation with immigration officials, like those embodied in the Memo, underscores the nature of Sheriff Mirkarimi's decision,[5] and further supports a conclusion that judicial intervention "would place the court in the unseemly position

---

[5] *Compare, e.g.*, Jeff Sessions, Opinion, *Sanctuary City Policies Harm Public Safety and the Rule of Law*, S.F. Chronicle (April 7, 2017), https://www.sfchronicle.com/opinion/article/Sanctuary-city-policies-harm-public-safety-11056840.php., *with* Gene Demby, *Why Sanctuary Cities Are Safer*, NPR (Jan. 29, 2017, 7:02 AM), https://www.npr.org/sections/codeswitch/2017/01/29/512002076/why-sanctuary-cities-are-safer.

of determining the propriety of decisions expressly entrusted to a coordinate branch of government." *Id.* at 360. The tragic and unnecessary death of Steinle may well underscore the *policy* argument against Sheriff Mirkarimi's decision to bar his employees from providing the release date of a many-times convicted felon to ICE. But that policy argument can be acted upon only by California's state and municipal political branches of government, or perhaps by Congress—but not by federal judges applying California law as determined by the California Supreme Court.

The cases on which Plaintiffs rely are inapposite because, unlike here, they involved lower level "operational" acts that were performed after a basic policy decision had already been made. *See Johnson*, 447 P.2d at 361–62 (holding that, while a decision to parole is a basic policy decision, a parole officer's subsequent decision as to what warnings to give to foster parents was "a determination at the lowest, ministerial rung of official action" and not entitled to immunity); *Barner v. Leeds*, 13 P.3d 704, 709, 712 (Cal. 2000) (noting that "there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated," and holding that acts of a deputy public defender in representing a client are not entitled to discretionary immunity because a deputy public defender's "services consist of operational duties that merely implement the initial decision to provide representation and are incident to the normal functions of the office of the public defender"); *McCorkle v. City of Los Angeles*, 449 P.2d 453, 460 (Cal. 1969) (holding that, even if a police officer made a discretionary decision to undertake an investigation, the officer's subsequent negligent acts in performing the investigation were not protected by discretionary immunity).

The Memo is plainly an example of decision-making at the "planning" level, as that term is used by the California Supreme Court. Thus, the issuance of the Memo was a discretionary act insulated from liability under section 820.2 of the California Government Code.[6]

We also conclude that the district court did not err in determining immunity on a motion to dismiss—the issue before the court was a legal one, not dependent on disputed facts, and courts routinely answer questions of immunity on a motion to dismiss. *See, e.g.*, *Gonzalez v. United States*, 814 F.3d 1022, 1025 (9th Cir. 2016) (holding, on an appeal from a motion to dismiss, that discretionary immunity barred plaintiffs' claims); *Caldwell*, 897 P.2d at 1323 (holding, on an appeal from a sustained demurrer by the trial court, that discretionary immunity applied).

We now turn to Plaintiffs' remaining arguments.

## II. Incorporation by Reference Doctrine

Plaintiffs argue that the district court improperly took judicial notice of the Memo's contents. We disagree. The district court expressly stated that it considered the Memo

---

[6] Plaintiffs also claim that, even if the act of issuing the Memo was insulated from liability, the separate act of withholding the requested information from ICE was ministerial and thus not protected by discretionary immunity. We decline to view the act of issuing the Memo and the act of withholding the very information that the Memo instructed to be withheld as separate acts. To do so would allow a protected discretionary act to be converted into a non-discretionary ministerial act. *Cf. Cty. of Sacramento v. Superior Court*, 503 P.2d 1382, 1386–87 (Cal. 1972) ("Ministerial implementation of correctional programs, however, can hardly, in any consideration of the imposition of tort liability, be isolated from discretionary judgments made in adopting such programs.").

under the incorporation by reference doctrine. This doctrine permits a court to consider a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, the Memo forms the very basis of Plaintiffs' claims, and Plaintiffs referred extensively to it throughout the district court proceedings. On appeal, Plaintiffs state that they "dispute the accuracy of the contents of the memorandum," but their substantial reliance on the Memo and their failure to question its accuracy below directly belies their position. Indeed, Plaintiffs' own legal counsel, by declaration, submitted a copy of the Memo in support of their motion for judgment below. Additionally, they did not oppose City Defendants' request for judicial notice of the Memo below[7] and, in their opposition to City Defendants' motion to dismiss, they actually cited and relied upon the Memo that was attached to City Defendants' request for judicial notice. Moreover, Plaintiffs fail to identify any specific part of the Memo that they claim is inaccurate, i.e., not part of the actual Memo.

In short, the district court appropriately considered the Memo under the incorporation by reference doctrine. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (rejecting party's claim questioning the veracity of SEC filings that were considered under the incorporation by reference doctrine because the party's "ongoing and substantial reliance" on the filings undermined her position),

---

[7] It does not appear that the district court ruled on City Defendants' request for judicial notice of the Memo.

*abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

## III.    The Sheriff's Discretionary Authority

Finally, Plaintiffs argue that Sheriff Mirkarimi lacked discretionary authority to issue the Memo and, therefore, is not entitled to immunity.  As set forth below, we reject that position and the various arguments offered in support.

### A.  8 U.S.C. §§ 1373(a) and 1644

Plaintiffs claim that Sheriff Mirkarimi lacked discretion to issue the Memo because 8 U.S.C. §§ 1373(a) and 1644 *required* the Sheriff's Department to provide release date information to ICE.[8]  The relevant parts of those sections prohibit any federal, state, or local restrictions on sending "information regarding" the "immigration status" of individuals to the Immigration and Naturalization Service.

Plaintiffs argue, relying on text found in different statutory sections, that "immigration status" includes whether an individual is lawfully present in the United States, and "the release date of an undocumented inmate is the date upon which he goes from lawful to unlawful presence in the United States."[9]  Therefore, according to

---

[8] We note that some courts have found § 1373 to be unconstitutional under the Tenth Amendment's anti-commandeering principles. *See, e.g.*, *States of New York et al. v. Dep't of Justice*, 343 F. Supp. 3d 213, 237 (S.D.N.Y. 2018), *appeal filed*, No. 19-275 (2d Cir. Jan. 28, 2019).  We do not reach this issue because we find that the Memo is not inconsistent with, or in violation of, § 1373.

[9] Plaintiffs rely on 8 U.S.C. §§ 1357(g)(10)(A) and 1231(a)(4) to support their argument.

Plaintiffs, release date information is "information regarding" "immigration status." Plaintiffs also point to legislative history and contend that congressional reports relating to §§ 1373(a) and 1644 demonstrate that those sections were intended to eliminate any restrictions on the flow of immigration information between state and local entities and federal immigration officials.

Plaintiffs' arguments ignore well-established rules of statutory interpretation. "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re HP InkJet Printer Litig.*, 716 F.3d 1173, 1180 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)). Further, we turn to extrinsic materials, like legislative history, only if the statutory text is ambiguous. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

The statutory text at issue clearly does not include release-date information. It includes only "information regarding" "immigration status," and nothing in §§ 1373(a) or 1644 addresses information concerning an inmate's *release date*. As the district court correctly found, no plausible reading of "information regarding" "immigration status" encompasses the state or local release date of an inmate who is an alien. *See also United States v. California*, 314 F. Supp. 3d 1077, 1102 (E.D. Cal. 2018) (holding that § 1373(a) does not encompass release-date information). Congress certainly could have added explicit "release date" wording to the statutes, but it did not. Accordingly, we hold that, although §§ 1373(a) and 1644 prohibit restrictions on

providing certain types of information to ICE, they plainly and unambiguously do not prohibit the restriction at issue in this case regarding release-date information.[10]   Thus, our inquiry is at an end, irrespective of legislative history.[11]

---

[10] We note that the Memo also prohibited employees from providing "citizenship/immigration status of any inmate" to ICE.  While that part of the Memo is directly contrary to the mandate of §§ 1373(a) and 1644, the operative part of the Memo on which Plaintiffs' claims rest—the withholding of release date information—is not inconsistent with those statutes.  Moreover, according to Plaintiffs, ICE was already aware of Lopez-Sanchez's immigration status.  Under the circumstances here, we see no reason, based on California law, to strip the Sheriff of his discretionary authority to promulgate the portion of the Memo directly at issue in this case because he may have lacked the authority to issue a different part of the Memo.  And Plaintiffs do not make any specific arguments based on California law that would support such a holding.

[11] We do note that at least some of the legislative history cited by Plaintiffs supports their argument.  For example, the House Conference Report that accompanied the bill related to § 1644, states, in relevant part:

> The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS.

H.R. Conf. Rep. No. 104-725, at 383 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649, 2771.  However, the plain and unambiguous statutory text simply does not accomplish what the Conference Report says it was designed to accomplish.

## B.  Immigration Policy

Plaintiffs claim that Sheriff Mirkarimi did not have discretionary authority to issue the Memo because the Memo "invaded" the federal government's authority over immigration law and frustrated ICE's ability to detain and deport Lopez-Sanchez.  We accept as true, as we must at this stage of the proceedings, that the issuance of the Memo interfered with ICE's ability to detain and deport Lopez-Sanchez, and that ICE would have detained Lopez-Sanchez had ICE been provided with his release date.  We also acknowledge Congress's plenary or near plenary power over immigration issues.  *See, e.g.*, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977).  Notwithstanding these principles, Plaintiffs fail to cite any authority that required Sheriff Mirkarimi to provide ICE with the release date.  That Sheriff Mirkarimi's actions adversely affected ICE's ability to do its job does not, without more, strip him of the discretionary authority under California law to institute the policy that he did.

## C.  Legislative Act

Plaintiffs argue that the Memo was an "act of legislating" and that Sheriff Mirkarimi did not have authority to legislate.  Consequently, according to Plaintiffs, the Sheriff is not entitled to immunity because he exceeded his discretionary authority in issuing the Memo.

Plaintiffs appear to believe that the Memo was a legislative act because it involved policymaking by the Sheriff.  But action by a government official that involves some weighing of policy is not the equivalent of a legislative act.  "'Policy' is a broad term that is not synonymous with legislation." *Worthington v. City Council of Rohnert Park*, 31 Cal. Rptr. 3d 59, 66 (Ct. App. 2005).  To the extent that Plaintiffs intended a more specific argument, they have not

provided an adequate explanation to preserve it.  *See* Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . the argument, which *must contain . . . appellant's contentions and the reasons for them*, with citations to the authorities[.]" (emphasis added)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons.").

### D.  California Public Records Act

Plaintiffs claim that the failure to provide ICE with Lopez-Sanchez's release date violated the California Public Records Act ("CPRA") and that the Sheriff lacked discretion to contravene the CPRA.[12]  The CPRA concerns "a request for a copy of records."[13]  As alleged, though, ICE's detainer request was not a request for a copy of records under the CPRA.  Plaintiffs assert that "ICE sent a detainer request to [the Sheriff's Department] *asking to be informed* of Mr.

---

[12] Plaintiffs do not explain why, even if there were such a violation, the remedy under California law would be to allow a non-requesting party to maintain an otherwise-barred tort suit.

[13] Section 6253(b) of the CPRA provides, in pertinent part: "Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, *upon a request for a copy of records that reasonably describes an identifiable record or records*, shall make the records promptly available to any person[.]"  Cal. Gov't Code § 6253(b) (emphasis added).  Section 6253(c) states, in pertinent part: "Each agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor."  *Id.* § 6253(c).  These sections are distinct from separate provisions requiring agencies to keep certain records open to "inspection" during regular hours.  *See id.* § 6253(a).  There is no allegation that ICE made a request to inspect records.

Sanchez's release date."   The complaint states that a "detainer request asks the receiving agency *to perform two tasks* in regard to an undocumented immigrant in custody: (1) *to notify* ICE forty-eight (48) hours prior to the release of the undocumented immigrant so that ICE can assume custody; and (2) *to detain* the individual until" ICE can assume custody.

Those allegations do not describe "a request for a copy of records."   Additionally, even if ICE's detainer request were construed as a public records request for documents reflecting a release date, the Sheriff's Department did not violate the CPRA because the CPRA does not require public agencies to create records.  *See Sander v. State Bar of Cal.*, 237 Cal. Rptr. 3d 276, 288 (Ct. App. 2018).  There is no allegation that the Sheriff's Department had but withheld an existing record with Lopez-Sanchez's release date at the time the detainer request was made.  Plaintiffs' contentions based on the CPRA do not show that the Sheriff's Department's failure to provide the release date information to ICE contravened the CPRA.

### E.  California Health and Safety Code Section 11369

Plaintiffs argue that the Memo violated California Health and Safety Code section 11369, which provides: "When there is reason to believe that any person arrested for a violation of [certain laws regarding controlled substances], may not be a citizen of the United States, the arresting agency shall notify the appropriate agency of the United States having charge of deportation matters."[14]  Contrary to Plaintiffs' argument, nothing in section 11369 requires the

---

[14] California Health and Safety Code section 11369 was repealed effective January 1, 2018.

transmission of an inmate's release date to ICE and, as noted above, the complaint affirmatively asserts that ICE already knew that Lopez-Sanchez was not a citizen of the United States.

Further, Plaintiffs allege that the federal government transferred Lopez-Sanchez to the custody of the Sheriff's Department after he completed a federal prison sentence. Accordingly, as the district court correctly ruled, section 11369 is inapplicable here because the Sheriff's Department was not the "arresting agency." Plaintiffs' allegations fail to demonstrate any violation of section 11369.

## F.  Other Local Laws

Plaintiffs claim that other local laws prohibited Sheriff Mirkarimi from limiting cooperation with ICE. They cite section 67.24(d) of the San Francisco Administrative Code, which provides in pertinent part: "The District Attorney, Chief of Police, and Sheriff are encouraged to cooperate with the press and other members of the public in allowing access to local records pertaining to investigations, arrests, and other law enforcement activity." By its plain text, section 67.24(d) simply "encourage[s]" cooperation; it does not mandate cooperation.

Plaintiffs also assert that San Francisco Administrative Code section 12H.2-1 prohibited Sheriff Mirkarimi from limiting cooperation with ICE.[15] Section 12H.2-1 at all relevant times provided, in pertinent part:

---

[15] San Francisco Administrative Code section 12H.2-1 was repealed effective July 17, 2016.

> Nothing in this Chapter shall preclude any
> City and County department, agency,
> commission, officer or employee from
> (a) reporting information to the Federal
> agency charged with enforcement of the
> Federal immigration law regarding an
> individual who has been booked at any
> county jail facility, and who has previously
> been convicted of a felony ... [; or]
> (b) cooperating with a request from the
> Federal agency charged with enforcement of
> the Federal immigration law for information
> regarding an individual who has been
> convicted of a felony . . . .

However, this section does not, by express provision or implication, mandate that the Sheriff (or any other officer) provide information to ICE regarding a convicted felon—it simply makes clear that the Chapter does not prohibit the same. As the Chapter does not bar the Memo, it cannot have the effect of stripping the Sheriff of his discretionary authority.

Plaintiffs also argue that, when read together, section 6.105 of the San Francisco Charter (the "Charter") and section 8.27 of the San Francisco Administrative Code *require* the Sheriff to cooperate with law enforcement authorities, including ICE. Charter section 6.105 sets forth the duties of the Sheriff and provides that, among other duties, the Sheriff "shall ... [r]eceive all prisoners committed to jail by competent authorities." Section 8.27 concerns the fixing of fees charged by the Sheriff's Department for the care and maintenance of prisoners from other jurisdictions, for the furnishing of reports and other

materials, and for the imprinting and processing of fingerprints.

Plaintiffs appear to reason that these sections require the Sheriff to cooperate with ICE because, when receiving and caring for prisoners from other jurisdictions, the Sheriff necessarily must cooperate with other law enforcement agencies. While it is necessary for the Sheriff to cooperate with other law enforcement authorities in performing his duties, there is no text in these sections that can be construed as prohibiting the issuance of the Memo.

In summary, Plaintiffs' arguments fail to show that Sheriff Mirkarimi lacked discretionary authority to issue the Memo. We therefore hold that the issuance of the Memo was a protected discretionary act under California Government Code section 820.2 and that City Defendants are immune from liability. *See* Cal. Gov't Code § 815.2(b).

## IV.    Leave to Amend

During oral argument, Plaintiffs requested leave to amend the complaint to remove all references to the Memo. However, this issue is waived because Plaintiffs failed to raise it in their opening brief.[16]  *See Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 911 (9th Cir. 2003). Even if the request had been properly raised on appeal (which would have been difficult, as Plaintiffs never made this argument below), the district court's denial of leave to amend was proper because Plaintiffs' claims would not be

---

[16] Plaintiffs requested leave to amend only *if* this court determined that one specific allegation in the complaint was an admission that Sheriff Mirkarimi had discretionary authority to issue the Memo. We made no such determination, and our holding does not rest on such a determination.

saved by any amendment; the Memo, on its face, reflects a basic policy decision entitled to discretionary immunity.[17] *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) ("[Leave to amend] is properly denied . . . if amendment would be futile.").

## CONCLUSION

Our holding today makes no judgment as to whether or not the policy established by the Memo was wise or prudent. That is not our job. "A federal court applying California law must apply the law as it believes the California Supreme Court would apply it." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). No part of the California Supreme Court's analysis looks at whether the policy or planning function at issue is wise or unwise because, of course, that is at the heart of the discretion that is protected by the statutory immunity. *See Caldwell*, 897 P.2d at 1327 ("*Johnson* does not require a *strictly careful, thorough, formal, or correct* evaluation. Such a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy.").

**AFFIRMED.**

---

[17] Removing references to the Memo in their complaint would be unavailing to Plaintiffs and would not assist them in overcoming the incorporation by reference doctrine, because the Memo, which established the policy of withholding release date information from ICE, forms the basis of their claims. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (stating that the policy underlying the incorporation by reference doctrine is to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006) (per curiam).

GRABER, Circuit Judge, concurring:

I join the opinion, which relies on the general discretionary-immunity statute, California Government Code section 820.2, in full.  I write separately to add that the California legislature has provided an even clearer, specific grant of immunity to Defendants in the present circumstances.

California Government Code section 845.8(a) immunizes public employees from "[a]ny injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release."   California Government Code section 846 immunizes public employees from any "injury caused . . . by the failure to retain an arrested person in custody."

As recognized by the California courts, the legislature intended those grants of immunity to be specific applications of the general discretionary-immunity statute.  *E.g.*, *Whitcombe v. County of Yolo*, 141 Cal. Rptr. 189, 195 & n.10 (Ct. App. 1977).  Moreover, when those specific immunity statutes apply, we need not determine whether the underlying acts were "discretionary" or "ministerial" because the legislature "has already concluded that all conduct within [the statutes'] terms is entitled to immunity." *Id.* at 197 & n.15.  "[A] specific legislative mandate of immunity effectively places beyond the pale of liability both discretionary decisions themselves and their ministerial implementations."  *Id.* at 198.  Here, as in *Whitcombe*, "we need not resort to th[e] general discretionary immunity section," because Defendants are immune under the specific immunity statutes.  *Id.* at 197; *see also Carmack v. Reynolds*, 391 P.3d 625, 632 (Cal. 2017) ("A specific provision relating to a particular subject will govern in respect to that subject,

as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (quoting *Miller v. Superior Court*, 986 P.2d 170, 177 (Cal. 1999))).

The specific immunity statutes apply here because Plaintiffs' entire claim rests on the manner in which a prisoner was released (he was released without notifying federal authorities). Even adopting Plaintiffs' view that the Memo, and not the release, caused the harm, the California courts have construed sections 845.8(a) and 846 broadly to encompass all "policy decisions . . . made prior to and as an integral part of the ultimate basic decision to release." *County of Santa Barbara v. Superior Court*, 93 Cal. Rptr. 406, 410 (Cal. Ct. App. 1971).

As the main opinion properly acknowledges, the events underlying this case are tragic. And some of Plaintiffs' claims remain to be litigated in the district court. We hold only that, under California law, the state officials are immune from suit.