UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES STEINLE, et al., <br> Plaintiffs, <br> v. <br> UNITED STATES OF AMERICA, <br> Defendant. | Case No. 16-cv-02859-JCS <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 115 |

## I. INTRODUCTION

This case arises from the tragic death of Kathryn Steinle ("Steinle") in a 2015 shooting. Plaintiffs are Steinle's parents James Steinle and Elizabeth Sullivan—individually, as heirs to Steinle, and as representatives of Steinle's estate. Plaintiffs' remaining claim in this action is against Defendant the United States of America, based on the purported negligence of a federal employee in failing to secure the handgun with which Steinle was shot, which was stolen from his personal vehicle days before the shooting. The United States moves for summary judgment, and the Court held a hearing on December 20, 2019. For the reasons discussed below, the United States' motion is GRANTED.[1]

## II. BACKGROUND

Most of the facts relevant to the present motion are not in dispute, or at least not disputed for the purpose of the present motion. On June 27, 2015, then-U.S. Bureau of Land Management ("BLM") Ranger John Woychowski was driving his personal Buick SUV with his family from his home and usual duty station near the Mexican border in El Centro, California to Sacramento,

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

California, on the way to a temporary duty assignment in Montana.[2] Woychowski stopped in San Francisco for dinner and parked his car at 9:45 PM in a lot at Pier 5 on the Embarcadero, somewhat near the Ferry Building, leaving all of his family's luggage in the car while they went to a restaurant. Among that luggage was a black backpack containing one of Woychowski's two duty handguns, a Sig Sauer P239, loaded and without a trigger lock. Woychowski did not apply his BLM-issued trigger lock to the handgun or stow the gun in a more secure place because he preferred to have ready access to at least one gun at all times, but Woychowski did not take a gun with him to the restaurant when he left the car. *See* Cordova Decl. (dkt. 118-1) Ex. 2 (Woychowski Dep.) at 118:14–119:17, 198:23–199:6. Woychowski testified that he put the backpack at least partially under the back of the driver's seat when he left the vehicle, Wall Decl. (dkt. 115-1) Ex. A (Woychowski Dep.) at 171:6–11, 174:10–175:9, and that a uniformed security guard indicated that he would be in the area until 11:00 PM, at which point Woychowski should be back in his vehicle, *id.* at 183:4–24. When Woychowski and his family returned to the car at 11:00 PM, they discovered that two windows had been broken and some but not all of the luggage left in the car had been stolen, including the backpack containing Woychowski's handgun. Police recovered Woychowski's backpack later that night from the scene of another break-in but did not recover the gun.

Four days later, on July 1, 2015, Steinle was walking with her father on Pier 14 of the Embarcadero, around half a mile from Pier 5, and Juan Francisco Lopez Sanchez[3] was sitting on a bench at Pier 14. Lopez Sanchez fired Woychowski's stolen handgun, and the bullet ricocheted off the ground and hit Steinle, who died from her injuries. The only evidence offered as to how Lopez Sanchez acquired the gun is a translation from Spanish of his muddled interview with

---

[2] Woychowski's duty status during this travel is complicated. June 27th was Woychowski's day off, "so he was not on a 'pay' or 'duty' status," but he was nevertheless on "'official travel status.'" *See* Mot. (dkt. 115) at 4 (citing Wall Decl. (dkt. 115-1) Ex. B (Fowler Dep.) at 77:19–19:12). The United States does not argue that Woychowski's duty status at the time of the theft precludes Plaintiffs' claims seeking to hold the United States responsible for Woychowski's conduct.

[3] Lopez Sanchez is also known as Jose Ines Garcia Zarate, the name under which he was criminally prosecuted for the shooting. This order refers to him as "Lopez Sanchez" for consistency with the parties' briefs and pleadings.

police investigators, in which Lopez Sanchez indicated that he found the gun wrapped in a shirt or rag near where he was sitting. Wall Decl. Ex. I at 125.[4] Lopez Sanchez was prosecuted in California state court and acquitted of murder, manslaughter, and assault, but convicted of being a felon in possession of a firearm. A state appellate court reversed the conviction on the firearm charge for failure to instruct the jury on the defense of momentary possession, with the trial having included contradictory evidence that might or might not have supported such a defense depending on the jury's view of the evidence. *See generally People v. Garcia Zarate*, No. A153400, 2019 WL 4127299, at *1 (Cal. Ct. App. Aug. 30, 2019) (unpublished).

Plaintiffs brought this action against the City and County of San Francisco and its former sheriff Ross Mirkarimi (collectively, the "City Defendants") and against the United States, asserting claims based on the United States and the City Defendants' failure to ensure that Lopez Sanchez, a felon eligible for deportation, was in fact deported when he was released from local custody on drug charges, as well as the claim at issue here based on Woychowski's conduct. Plaintiffs also initially named Lopez Sanchez as a defendant, but voluntarily dismissed their claims against him without prejudice. This Court previously dismissed all claims based on failure to deport Lopez Sanchez with prejudice, which included all claims against the City Defendants and some claims against the United States, and the Ninth Circuit affirmed. *See* Order re Mots. to Dismiss ("MTD Order," dkt. 48);[5] *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154 (9th Cir. 2019). The Court also dismissed a negligence per se claim based on Woychowski's conduct with leave to amend, but Plaintiffs did not file an amended complaint. The only remaining claim is against the United States for basic negligence under the Federal Tort Claims Act as incorporating California law, based on Woychowski's failure to secure the firearm that was stolen and used in the shooting.

The United States now moves for summary judgment, arguing that Plaintiffs have shown neither that Woychowski had a duty to Plaintiffs under California law nor that Woychowski's

---

[4] The parties have not addressed whether this document is inadmissible hearsay.
[5] *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

3

failure to secure the gun was a proximate cause of Steinle's death. Although the United States also suggests that the record does not show Woychowski acted negligently, it does not move for summary judgment on that basis, and the Court does not reach that issue.[6] The Court assumes for the purpose of this order that a jury could find that Woychowski acted negligently in leaving a loaded, unlocked handgun in a backpack in a car full of luggage, parked on the street at night in a large city with which Woychowski was not familiar. Plaintiffs argue that under a doctrine of California negligence law known as "special circumstances," the United States can be held liable for damage foreseeably caused by the foreseeable theft of Woychowski's firearm.

## III. ANALYSIS

### A. Legal Standard

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*. (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of

---

[6] While not relevant to the outcome of the present motion, the Court notes that Plaintiffs are likely correct that a jury would not be required to credit Woychowski's testimony regarding his conversation with the security guard and how he concealed the backpack. The Court further notes, however, that Plaintiffs' assertion that the conversation with the security guard is inadmissible hearsay is incorrect. The statement is offered for its effect on Woychowski (i.e., whether he had reason to believe that a guard would be present), not for the truth of any matter asserted by the guard (i.e., whether the guard in fact intended to present until 11:00).

4

identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). Neither conclusory, speculative testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### B. Elements of the Claim

Plaintiffs' remaining claim is for negligence under California law and the Federal Tort Claims Act ("FTCA"). "The FTCA, a limited waiver of the United States' sovereign immunity, provides that the United States shall be liable 'in the same manner and to the same extent as a private individual under like circumstances' under applicable state law." *Dugard v. United States*, 835 F.3d 915, 918–19 (9th Cir. 2016) (quoting 28 U.S.C. § 2674). In California, "[t]he elements of a negligence action are duty, breach of duty, causation, and damages." *Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 377 (2009) (citing, *e.g.*, *Paz v. California*, 22 Cal. 4th 550, 559 (2000)). The United States seeks summary judgment based on the elements of duty and causation.

### C. Duty, and "Special Circumstances" Cases

California courts "have invoked the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act.'" *Beacon Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014) (quoting *Bily v.*

5

*Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992)). The California Supreme Court has identified several "major" factors relevant to the existence and scope of a common law duty of care:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968); *see also, e.g.*, *Verdugo v. Target Corp.*, 59 Cal. 4th 312, 326 (2014) (citing *Rowland* with approval). Of those factors, the parties' arguments here (as was also the case for the earlier motions to dismiss) focus primarily on foreseeability, a "concept [that] plays a variety of roles in tort doctrine," including in the context of proximate cause, discussed separately below. *See Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986).

California law generally imposes a stringent duty of care for dealing with guns. In light of the "risk incident to dealing with . . . firearms" and other instrumentalities with similar capacity to do harm, "the standard of care required of the reasonable person when dealing with such dangerous articles is so great that a slight deviation therefrom will constitute negligence." *Warner v. Santa Catalina Island Co.*, 44 Cal. 2d 310, 317 (1955); *see also Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 116 (1992); *Reida v. Lund*, 18 Cal. App. 3d 698, 704 (1971). On the other hand, as a general rule, "in the absence of a special relationship there is no duty to control the conduct of a third person so as to prevent him from harming another." *Palma v. U.S. Indus. Fasteners, Inc.*, 36 Cal. 3d 171, 184–85 (1984).[7]

As noted in the Court's previous order at the pleadings stage, most but not all cases from outside of California have held that a gun owner is not liable for harm caused using a stolen gun. *See* MTD Order at 41–42 (comparing, *e.g.*, *Jones v. Secord*, 684 F.3d 1 (1st Cir. 2012), *Finocchio v. Mahler*, 37 S.W.3d 300 (Mo. Ct. App. 2000), and *McGrane v. Cline*, 94 Wash. App. 925 (1999), with *Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App. 3d 46 (1994)). As far as this Court is

---

[7] Plaintiffs do not assert a special relationship among any of the parties or individuals involved in this case, *see* Opp'n (dkt. 118) at 17–18, and this order does not address that doctrine.

aware, however, no court has applied California law to similar circumstances. In perhaps the closest case, a California appellate court reversed summary judgment entered for the defendant on the distinguishable facts of a defendant father having left a rifle where his minor son could access it and the minor son using the rifle to shoot several people, with evidence from which a jury could have concluded that the father should have known his son was prone to violence. *Reida*, 18 Cal. App. 3d 698.

Lacking authority more directly on point, this Court looked to a line of California cases—the "special circumstances" cases—allowing negligence claims to proceed against defendants who failed to secure particularly dangerous vehicles where thieves caused damage using the vehicles. MTD Order at 43–45. These cases represent an exception to the usual rule that "in the absence of a special relationship there is no duty to control the conduct of a third person so as to prevent him from harming another." *Palma*, 36 Cal. 3d at 184–85.[8]

> The "special circumstances" doctrine, an exception to the general rule that vehicle owners are not liable for harm caused by thieves' use of their vehicles, is essentially "nothing more than a test of foreseeability of harm." *Palma*, 36 Cal. 3d at 186. Among the factors that courts have considered are "the enormity of the potential harm, and . . . the facility with which a potential wrongdoer could learn of and take advantage of the virtual invitation to theft." *Id.* at 185 (citing *Richardson v. Ham*, 44 Cal. 2d 772 (1955); *Murray v. Wright*, 166 Cal. App. 2d 589 (1958)). "Those circumstances are merely illustrative, however, of conduct which may create foreseeable risk of harm and impose liability if that risk becomes a reality." *Id.*
>
> The cases finding the special circumstances doctrine applicable generally involve particularly dangerous vehicles left with the keys in the ignition or otherwise ready to operate.

MTD Order at 43.

---

[8] Plaintiffs contend that the rule regarding lack of duty to control third parties is not applicable because, according to Plaintiffs, this is a case of Woychowski's affirmative misfeasance rather than failure to act. Opp'n at 17–18. *Palma*'s characterization of the "special circumstances" doctrine in stolen vehicle cases as an exception to that rule tends suggest that the rule would apply here if the "special circumstances" doctrine does not. The Court is not persuaded that leaving keys in the ignition of construction vehicle parked on the street, as in the archetypal "special circumstances" case, is any less an affirmative act than Woychowski leaving his duty handgun in a backpack in his vehicle. Moreover, the case on which Plaintiffs rely for this argument involved a more direct link between the defendant's conduct and the plaintiffs' harm than is present here. *See Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40 (1975) (affirming liability where a defendant radio station's promotion induced teenagers to follow a disk jockey at high speed on the highway in the hopes of receiving a cash prize, and in doing so the teenagers caused a fatal accident).

7

In *Richardson*, the California Supreme Court held that a claim could proceed against defendants who failed to secure a massive bulldozer—which had been a subject of notable public interest—with an effective ignition lock, which allowed a drunk group of trespassers to start the bulldozer and, after joyriding around the construction site, inadvertently set it off on a one-mile unpiloted rampage through a residential area. *Richardson*, 44 Cal. 2d at 774–76. In *Hergenrether v. East*, the California Supreme Court reversed a defense judgment-notwithstanding-the-verdict, holding that defendants could be held liable for leaving a two-ton truck parked on the street unlocked with the key in the ignition, where the truck was stolen and late that night collided with another car, causing serious injuries. 61 Cal. 2d 440, 441−42 (1964). The California Supreme Court in *Palma* similarly reversed a grant of summary judgment for defendants who left a large commercial truck unlocked with the keys inside in a lot near the street in a high crime neighborhood, where a former employee stole the truck and ran over the plaintiff. *Palma*, 36 Cal. 3d at 176, 184−86. More recently, in *Carrera v. Maurice J. Sopp & Son*, a California appellate court reversed a grant of summary judgment in favor of a defendant who had left a tow truck unattended with the key in the ignition in a high-crime area, holding that the defendant could instead be held liable for the damage caused when a paroled gang member stole the truck and drove through a crowded bus stop, killing three people. *Carrera*, 177 Cal. App. 4th 366, 370–71 (2012). In *Reida*, the case holding that a father could be liable for deaths and injuries his son caused with the father's rifle, the court cited *Hergenrether* and its "special circumstances" doctrine as "somewhat analogous." *Reida*, 18 Cal. App. 3d at 706.

This Court previously held that a handgun is at least analogous to a heavy vehicle in the potential danger created if it falls into inexperienced and unauthorized hands, MTD Order at 44–45, and stands by that conclusion now. Under California law, a gun owner who fails to secure a loaded handgun from foreseeable theft can be held liable under appropriate circumstances for harm caused by the thief.

In all of the "special circumstances" cases, however, the damage appears to have been caused *by the thief or thieves*, and *in the aftermath* of the theft. *See Palma*, 36 Cal. 3d at 176,

184−86; *Richardson*, 44 Cal. 2d at 774–76; *Carrera*, 177 Cal. App. 4th at 373–74.[9] A 1993 California appellate decision, *Avis Rent A Car System, Inc. v. Superior Court*, 12 Cal. App. 4th 221 (1993), considered harm caused with a vehicle separately from its theft and after a significant passage of time. In that case, someone stole a car from Avis's rental car operation near the San Francisco International Airport, where Avis routinely left keys in the ignition of vehicles during the check-in process and had previously had cars stolen. *Id.* at 222–23. Seven days later, and with more than a thousand additional miles on the odometer, suspected shoplifters drove the same car away from a sporting goods store in Emeryville, California, on the opposite side of San Francisco Bay from the airport. *Id.* at 223. During a high-speed police chase, the suspected shoplifters collided with the plaintiffs. *Id.*

A California appellate court held that the trial court erred in denying Avis's motion for summary judgment, primarily because the special circumstances doctrine does not apply to "ordinary vehicles" rather than particularly large and dangerous vehicles. *Id.* at 228–30, 233. Despite that holding, which in itself sheds little light on this case involving theft of a deadly weapon, the *Avis* court went on to state that the gap in time and space between the theft and the accident would separately be sufficient to nullify any duty:

> Even if we were somehow to find the circumstances "special," we would not extend the duty to this accident. The duty, if it existed, would not be perpetual and unlimited in scope. We conclude, as a matter of law, that it would not extend to this accident: (1) in another county (2) one week later (3) during a police chase not caused by a report of the vehicle theft.

*Id.* at 233; *cf. Carrera*, 177 Cal. App. 4th at 371 ("Further, the injuries . . . occurred shortly after the theft of the tow truck and were not so temporally disparate as to suggest a termination of causation." (distinguishing *Avis* and a case in which injuries occurred two days after a theft)).

That alternative holding of *Avis*, while perhaps dicta, is instructive here. Three and a half days elapsed between the theft of Woychowski's handgun and Steinle's shooting. There is no

---

[9] In *Hergenrether*, it was not entirely clear that the driver of the truck (who fled the scene of the accident and was not identified) was the thief, but the accident occurred the same night that the truck was stolen, and a finder of fact might reasonably infer that the driver was more likely than not the thief. *See* 61 Cal. 2d at 442.

9

evidence indicating how the gun came to be present on the pier where Steinle was shot. There is no evidence that Lopez Sanchez stole the gun from Woychowski's car, and Plaintiffs do not assert that he did. *See* Opp'n (dkt. 118) at 11 ("Mr. Lopez-Sanchez . . . was not looking for a gun until he found one a half mile down the street from where it had been stolen . . . [.]" (heading text; capitalization and emphasis omitted)). It is possible that, immediately after breaking into Woychowski's car, the thief walked half a mile and left the gun where Lopez Sanchez found it three and a half days later. It is equally consistent with the evidence in the record, however, that the gun could have passed through the hands of any number of other people, and traveled throughout the San Francisco Bay Area or beyond, before ending up at Pier 14. Aside from the fact that the stolen gun was used, there is no evidence that the shooting was in any way connected to the theft.[10] Plaintiffs cite no case imposing a duty to prevent harm so far removed from the theft of a dangerous vehicle or instrument, and the Court is not aware of any authority so holding.

Under the "special circumstances" doctrine, Woychowski had a duty to secure his handgun in a manner that did not impose a risk of harm on third parties who might be injured in the course of the foreseeable theft of the gun. Such a duty would perhaps most clearly encompass bystanders injured by an accidental discharge of the gun during the auto burglary. *Cf. Richardson*, 44 Cal. 2d 772 (allowing claims by parties injured when trespassers were unable to stop the bulldozer they had started). It might also encompass someone injured by a thief who, upon finding the gun, wandered the area firing it aimlessly, *cf. Carrera*, 177 Cal. App. 4th at 370 (applying special circumstances where a thief driving a stolen tow truck struck several vehicles parked near the truck and eventually drove through a crowded bus stop), or even someone injured if, upon finding the gun, the thief set out with it confront some adversary, *cf. Palma*, 36 Cal. 3d at 176 (applying

---

[10] After the hearing, Plaintiffs submitted evidence that they contend indicates that the cartridges found in the handgun after the shooting, as well as the bullet that struck Steinle, were the same ammunition that Woychowski had left in the gun when it was stolen. *See* Pls.' Supp'l Filing (dkt. 122). That evidence consists of San Francisco Police Department lab reports stating that the ammunition recovered was of the same caliber, weight, and manufacturer as the ammunition that Woychowski left in the gun. *See id.* Exs. 1–3. The likelihood that the gun contained the same ammunition at the time of the shooting as when it was stolen does not change the Court's conclusion that the differences in time, location, and actors between the theft and the shooting foreclose a finding of actionable duty under California's "special circumstances" doctrine.

special circumstances where the thief "had stolen the truck and had driven it to the home of [his] former wife where the injury to [the plaintiff] occurred"). But Woychowski's duty was "not perpetual and unlimited in scope," *Avis*, 12 Cal. App. 4th at 23, and Plaintiffs have offered no limiting principle that differentiates Steinle's tragic death from any other harm that might be caused by a stolen gun down the line from a theft, after it has changed hands at least once (and perhaps more than once).

In the absence of authority so holding, this Court declines to stretch California's relatively narrow "special circumstances" doctrine to encompass previously-unrecognized liability for any subsequent third-party criminal conduct involving a stolen weapon. The United States' motion is GRANTED.

### D. Causation

Although the lack of duty is sufficient to grant the United States' motion, the Court also addresses the issue of proximate cause, which rests on similar considerations and provides a separate and sufficient basis to grant the motion.

The causation element of a negligence claim generally "has two aspects": (1) whether the defendant's action or inaction was a "cause in fact" of the plaintiff's injury, also known as "but for" causation; and (2) whether, based on "the degree of connection between the conduct" and considerations of public policy, it would be "unjust to hold [the defendant] legally responsible," often referred to as "proximate" causation. *State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 352−53 (2015) (citations and internal quotation marks omitted).

Plaintiffs contend that the proximate cause standard is not applicable here because they rely on the "substantial factor" test for multiple concurrent causes. *See* Opp'n at 20. But the case on which Plaintiffs rely—indeed, the passage that Plaintiffs quote in their brief—does not distinguish the substantial factor test from the policy-based proximate cause test requiring a sufficient connection between the defendant's conduct and plaintiff's injury, but instead draws a contrast between the substantial factor test and the *but-for* test. *See id.* ("'[I]n cases where concurrent independent causes contribute to an injury, we apply the "substantial factor" test . . . . This case does not involve concurrent independent causes, so the "but for" test governs questions

11

of factual causation.'" (quoting *State Dep't of State Hosps.*, 61 Cal. 4th at 352 n.12) (ellipsis in original)). A plaintiff must show proximate cause even where the plaintiff relies on the substantial factor test of factual causation; the two tests are not distinct and can overlap. *See, e.g.*, *Grotheer v. Escape Adventures, Inc.*, 14 Cal. App. 5th 1283, 1303 (2017) ("To be considered a *proximate cause* of an injury, the acts of the defendant must have been a "*substantial factor*" in contributing to the injury." (emphasis added)).

Both parties cite a Texas case holding that plaintiffs had not shown proximate cause with respect to a shooting that took place days after the gun used was stolen from the defendant gun store. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262 (Tex. App. 2000); Mot. (dkt. 115) at 20; Opp'n at 23. That court addressed the issue as follows:

> In the case before us, [the defendant's] conduct (failing to exercise care in the storage and display of its firearms) did nothing more than create the condition that enabled Monsivaiz to steal the gun. The forces generated by appellee's failure to safely maintain its guns had come to rest long before Guerrero murdered Alek Ambrosio. The crime in which the gun was used occurred at least two weeks after the gun was stolen, occurred in a different county, and was committed by someone other than the original thief. From the time the gun was stolen, the gun changed hands at least four times. To suggest that if Monsivaiz had not been able to steal the gun, Guerrero would not have ended up with it and would not have murdered Alek Ambrosio is nothing more than causation in the "philosophic sense," which has been rejected as insufficient to establish legal cause. Indeed, appellants failed to provide summary judgment proof raising a fact issue as to how appellee's failure to safely maintain its guns was a substantial factor in bringing about the injury which would not otherwise have occurred.

*Ambrosio*, 20 S.W.3d at 268–69.

Plaintiffs distinguish *Ambrosio* on the grounds that there, "the murder would have occurred regardless of the particular gun the murdered [sic] used" and "[r]egardless of whether or not the original theft had occurred," while according to Plaintiffs, "[t]he same is not true here." Opp'n at 23. Without any evidence of what transpired in the days between the theft and the shooting, however, there is no way to tell whether the same is true. The gun at issue here moved at least approximately half a mile after it was stolen, or perhaps significantly further if it took a circuitous route in the intervening period; it was not simply left on the ground at the scene of the break-in. Perhaps whoever left the gun where Lopez Sanchez found it would have been carrying a gun that

he or she wished to dispose of regardless of whether that gun had been the one stolen from Woychowski's car. Or perhaps not; there is no evidence either way. This Court finds *Ambrosio*'s reasoning persuasive here to the extent that Plaintiffs have not been able to show *whether* there is anything "more than causation in the 'philosophic sense.'" *See Ambrosio*, 20 S.W.3d at 269.

At the hearing, Plaintiffs' counsel characterized a New Jersey case, which was cited in the United States' motion but not addressed in Plaintiffs' opposition brief, as holding that the owner of a stolen gun could be held liable under similar circumstances. In that case, a New Jersey state trial court[11] denied a motion for summary judgment by a defendant gun store where two gunmen killed two people eleven days after one of the gunmen stole the guns used in the shooting from the store. *Gallara v. Koskovich*, 364 N.J. Super. 418, 423–24, 444 (2003). The court held that although "[r]easonable minds may differ with respect to whether [the gun store] was negligent and whether that negligence, if any, was a proximate cause of the wrongful deaths, . . . a jury could decide that [the gun store] should have foreseen or anticipated that stolen guns would likely cause harm, that reasonable security measures would have served as an effective deterrent, and that failure to take such measures was a substantial contributing factor to the ultimate harm suffered." *Id.* at 444. *Gallara* is distinguishable from the present case in that there, one of the people who shot the victims was the thief who had stolen the guns, harmonizing that decision with each of the California "special circumstances" stolen vehicle cases discussed above. To the extent that *Gallara* could be read more broadly as allowing liability under the circumstances presented here, where the shooter was not involved in the theft, the Court finds no support for such a holding in California law.

In this case, the gun traveled at least some distance from the theft, three and a half days elapsed, the gun changed hands once at the very least, and there is no way to know what else transpired during that time. Even if the gun was taken directly to Pier 14 by the thief and left there until Lopez Sanchez found it days later—facts that, again, cannot be determined on the record

---

[11] The parties disputed at the hearing whether the New Jersey Superior Court that decided *Gallara* was a trial court or New Jersey's highest appellate court. The United States was correct that *Gallara* is a trial court decision. New Jersey's highest court is the Supreme Court of New Jersey.

presented—that separation in time, space, actors, and conduct would be sufficient in this Court's view to break the chain of proximate causation between Woychowski's purportedly negligent storage of the gun and Steinle's death. Accordingly, for reasons similar to those addressed above in the context of duty, the Court concludes that Plaintiffs have not met their burden to show a sufficient causal connection between the theft and the shooting such that "'the various considerations of policy that limit an actor's responsibility for the consequences of his conduct'" weigh in favor of holding the United States liable for the harm caused by a negligently unsecured gun days after its theft. *See State Dep't of State Hosps.*, 61 Cal. 4th at 353 (quoting *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1045 (2003)). Although the underlying considerations are similar, this failure to establish proximate cause is a second reason, separate from the lack of duty, to grant the United States' motion for summary judgment.

## IV.  CONCLUSION

For the reasons discussed above, the United States' motion for summary judgment is GRANTED. The Clerk is instructed to enter judgment in favor of the United States and close the case.

**IT IS SO ORDERED.**

Dated: January 6, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

14