**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES STEINLE, individually and as heir to Kathryn Steinle, deceased; ELIZABETH SULLIVAN, individually and as heir to Kathryn Steinle, deceased, *Plaintiffs-Appellants*, v. UNITED STATES OF AMERICA, *Defendant-Appellee*, and CITY AND COUNTY OF SAN FRANCISCO, a government entity; JUAN FRANCISCO LOPEZ-SANCHEZ; ROSS MIRKARIMI, *Defendants*. | No. 20-15419 D.C. No. 3:16-cv-02859-JCS OPINION |

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted July 7, 2021
San Francisco, California

Filed August 24, 2021

Before: A. Wallace Tashima and Susan P. Graber, Circuit Judges, and Kathryn H. Vratil,[*] District Judge.

Opinion by Judge Graber

## SUMMARY[**]

**Federal Tort Claims Act / California Tort Law**

The panel affirmed the district court's summary judgment in favor of the United States in plaintiffs' Federal Tort Claims Act ("FTCA") action alleging that the negligence of a Bureau of Land Management ("BLM") ranger resulted in the death of their daughter, Kathryn Steinle.

A gun was stolen from the ranger's parked car. Four days later, Ms. Steinle was shot and killed while walking on Pier 41 in San Francisco when Juan Francisco Lopez found the pistol and fired it. Plaintiffs alleged that the ranger was negligent in failing to store or secure his firearm properly and in leaving it loaded, in an unattended vehicle in an urban location where the firearm could be stolen readily.

The panel affirmed the district court's summary judgment on the ground that the ranger's conduct was not the proximate cause of Ms. Steinle's death. Applying California law, the

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel concluded that the connection between the ranger's storage of the pistol in his vehicle and Ms. Steinle's death was so remote that, as a matter of law, the ranger's acts were not the proximate or legal cause of the fatal incident. The panel did not reach the question whether the ranger owed a duty of care to Ms. Steinle.

## COUNSEL

Valerie T. McGinty (argued), Law Office of Valerie T. McGinty, San Mateo, California; Frank M. Pitre and Donald Magilligan, Cotchett Pitre & McCarthy LLP, Burlingame, California; for Plaintiffs-Appellants.

Shiwon Choe (argued), Assistant United States Attorney; Sara Winslow, Chief, Civil Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

Plaintiffs James Steinle and Elizabeth Sullivan brought the present action against Defendant the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. They allege that the negligence of Bureau of Land Management ("BLM") ranger John Woychowski resulted in

4                       STEINLE V. UNITED STATES

the death of their daughter, Kathryn Steinle.[1] The district court entered summary judgment in favor of Defendant, concluding that Woychowski owed no duty to Ms. Steinle and that Plaintiffs failed to establish proximate causation. Reviewing de novo, *King v. County of Los Angeles*, 885 F.3d 548, 556 (9th Cir. 2018), we affirm on the ground that Woychowski's conduct was not the proximate cause of Ms. Steinle's death. We need not and do not reach the question whether, under California law, Woychowski owed a duty to Ms. Steinle.

FACTUAL AND PROCEDURAL HISTORY

In 2015, Woychowski worked as a law enforcement ranger for the BLM, which is part of the United States Department of the Interior. His duty station was in El Centro, California. While traveling with his family in their personal car, en route to Montana, the family stopped for the night in San Francisco on June 27, 2015. Woychowski parked on the street along the Embarcadero, a waterfront boulevard popular with tourists, at about 9:30 p.m. The family walked to a nearby restaurant. The family's luggage and other belongings, including two DVD screens attached to the back of the seats, were visible to passersby. Among other things, Woychowski left in the car a loaded, BLM-issued Sig Sauer P239, in a holster, inside a backpack. The pistol did not have the trigger lock on it that the BLM had issued to Woychowski.

---

[1] Plaintiffs brought additional claims against the City and County of San Francisco, former San Francisco Sheriff Ross Mirkarimi, and Juan Francico Lopez-Sanchez. We addressed those unrelated matters in *Steinle v. City & County of San Francisco*, 919 F.3d 1154 (9th Cir. 2019).

STEINLE V. UNITED STATES     5

Just before 11 p.m., Woychowski and his family returned to the car. They found the rear passenger windows smashed and the backpack, along with some other property, gone. Woychowski reported the theft to police immediately. The backpack was recovered that night, but the pistol that had been in it was not.

Four days after the theft, the fatal incident occurred. On July 1, 2015, Ms. Steinle was walking with her father on Pier 14 near the Embarcadero, about half a mile from where Woychowski had parked the family car. Juan Francisco Lopez-Sanchez was sitting on a bench nearby. He found Woychowski's pistol, wrapped in a shirt or rag, near where he was sitting. He bent over and picked up the wrapped pistol; he fired it; and a bullet ricocheted off the ground, striking and killing Ms. Steinle.[2] It is not known who stole the pistol, how many people possessed it in the four days between June 27 and July 1, who took the pistol out of the holster and wrapped it in a shirt or rag (or why they did so), or how the pistol came to be left near the bench where Lopez-Sanchez found it.

Plaintiffs sued under the FTCA, alleging that Woychowski was negligent in failing to store or secure his firearm properly and in leaving it, loaded, in an unattended vehicle in an urban location where the firearm could be stolen readily. The district court entered summary judgment in favor of Defendant, ruling that Woychowski owed no duty to Ms. Steinle under California law and that Woychowski's

---

[2] A jury acquitted Lopez-Sanchez, also known as Jose Ines Garcia Zarate, of murder, manslaughter, and assault, and his conviction for being a felon in possession of a firearm was overturned. *People v. Garcia Zarate*, No. A153400, 2019 WL 4127299 (Cal. Ct. App. Aug. 30, 2019).

actions were not a proximate cause of her death. Plaintiffs timely appeal.

DISCUSSION

Under the FTCA, the United States may be held liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the alleged negligence occurred in California, we apply the tort law of California. *Miller v. United States*, 945 F.2d 1464, 1466 (9th Cir. 1991) (per curiam). And we review de novo the district court's interpretation of California tort law. *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 521 (9th Cir. 1984).

In California, the "plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (2017) (internal quotation marks omitted). As noted, we do not reach the question whether Woychowski owed a duty of care to Ms. Steinle. The required element of legal causation has two components: "cause in fact and proximate cause." *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 298 (2015).[3]

---

[3] Plaintiffs appear to argue that they need only establish cause in fact. That is incorrect. Indeed, the very case on which they rely reiterates the familiar California requirement that, "[t]o prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate,

Although causation often presents a question of fact for the jury, "where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015) (internal quotation marks omitted). Because the factual causes of an event may be traced far into the past, the law imposes additional limitations on liability. Those additional limitations relate not only to the degree of connection between the conduct and the injury, but also to public policy. *Id.* The doctrine can bar liability even when the defendant's conduct is a factual cause of harm, depending on the manner in which the injury occurred or the extent to which the ultimate harm is attenuated from the breach of duty alleged. *Id.*; *see also PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315 (1999) ("To simply say . . . that the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable.").

We conclude that the connection between Woychowski's storage of the pistol in his vehicle and Ms. Steinle's death is so remote that, as a matter of law, Woychowski's acts were not the proximate or legal cause of the fatal incident. Several events—many of which remain unknown—intervened after Woychowski left the loaded pistol in his vehicle: (1) someone broke into the locked vehicle; (2) someone stole a seemingly innocuous backpack; (3) someone found a pistol in that backpack; (4) someone removed the pistol from its holster, then wrapped it in a cloth and abandoned or lost it a

---

or legal, cause of the injury." *Union Pac. R.R. Co. v. Ameron Pole Prods. LLC*, 43 Cal. App. 5th 974, 980 (2019). In that case, the issue pertained only to cause in fact. *Id.* at 981–86. Here, by contrast, the pivotal issue is proximate cause.

half-mile away; (5) Lopez-Sanchez picked up the firearm, four days later, and fired it, apparently aimlessly; and (6) the bullet ricocheted off the ground and struck Ms. Steinle.

That "Rube Goldbergesque system of fortuitous linkages," *Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal. App. 4th 583, 588 (1997), is comparable to the facts in cases in which California courts have held that proximate cause is lacking as a matter of law. In *Wawanesa*, a minor bought two packs of cigarettes and gave one to a slightly younger minor. *Id.* at 585. The minors then trespassed onto a private storage facility containing stacked telephone poles. *Id.* As the younger minor smoked, another minor ran into him, causing him to drop the cigarette, which set fire to the poles. *Id.* The company that owned the poles sued the cigarette-purchasing minor for negligence. *Id.* at 586. As the Court of Appeal explained, "the concatenation between [the minor's] initial act of giving [the friend] a packet of cigarettes and the later fire is simply too attenuated to show the fire was reasonably within the scope of the risk created by the initial act." *Id.* at 588 (emphasis omitted). There was "simply too much fortuity in the chain." *Id.* at 589.

The Court of Appeal similarly concluded that there was no proximate causation in *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063 (2020). A plaintiff sued Starbucks after she spilled a cup of hot tea and suffered serious burns; she alleged that the cup was defective. *Id.* at 1065. But other mishaps led to the spill: the plaintiff walked to a table with the drink, put the drink down, removed the lid, bent over the table, pushed out her chair, lost her balance, grabbed the table to avoid failing, and knocked her drink off the table. *Id.* at 1070. The court explained why the ultimate injury was too attenuated from the alleged negligence:

> Shih argues that, "but for" the fact the cup was "too hot and too full" to hold[,] . . . Shih would not have "attempt[ed] to sip the water from the cup" in the manner she did. Instead, Shih presumably would have raised the cup to her mouth, and therefore would not have leaned forward, would not have moved the chair out from under her, would not have lost her balance, would not have grabbed the table, and would not have knocked her cup off the table and spilled hot tea on herself.
>
> But that's a lot of "would not haves," and because of that the alleged defects in the drink were *too remotely connected* with [Shih's] injuries to constitute their legal cause.

*Id.* at 1068–69 (citations omitted) (emphasis added).

Finally, in *Modisette v. Apple, Inc.*, 30 Cal. App. 5th 136 (2018), a driver using Apple's FaceTime application on his iPhone hit the plaintiffs' vehicle. *Id.* at 139. The plaintiffs alleged that Apple had failed to implement a technology that would have prevented iPhone owners from using FaceTime while driving at highway speed. *Id.* at 140. Once again, "the tenuous connection between Apple's conduct and [plaintiffs'] injuries bar[red] a finding of proximate causation." *Id.* at 152. In other words, "*the gap* between Apple's design of the iPhone and the [plaintiffs'] injuries is too great for the tort system to hold Apple responsible." *Id.* at 155 (emphasis added).

Those three cases illustrate how and why California courts consider a long chain of events relevant in determining

the presence or absence of proximate causation. A series of quickly-sequenced mishaps broke the chain of causation between the design of the Starbucks cup and the serious burns suffered by the plaintiff. *Shih*, 53 Cal. App. 5th at 1070. Similarly, a chain of unanticipated "but-for's" meant that a minor's negligence did not proximately cause a fire that damaged the plaintiff's property. *Wawanesa Mut.*, 60 Cal. App. 4th at 588. And reckless driving superseded Apple's design of the iPhone in causing a car accident, even though the driver had capitalized on his ability to use FaceTime while on a highway. *Modisette*, 30 Cal. App. 5th at 139, 152. Here, too, Ms. Steinle's death has only a tenuous connection to Woychowski's storage of the pistol; the criminal and negligent actions of at least two other people intervened between those two events.

In the specific context of stolen firearms, other jurisdictions have approached the proximate-cause analysis in a similar fashion. In *Finocchio v. Mahler*, 37 S.W.3d 300, 301 (Mo. Ct. App. 2000), a minor stole a firearm and ammunition from his friend's father. The father kept the firearm and ammunition in a night stand. *Id.* The next day, the minor recklessly discharged the firearm and killed a young woman. *Id.* at 302. The woman's mother sued, arguing that the owner of the firearm was negligent in storing the weapon in an unlocked drawer without a trigger lock or other safety device. *Id.* The court concluded that the plaintiff had failed to show that any negligence was the proximate cause of the death. *Id.* The chain of causation, the court reasoned, included criminal acts, which were "acts over which the owner had no control." *Id.* at 303–04.

Additionally, in *Estate of Strever v. Cline*, 278 Mont. 165, 169 (1996), a man left a firearm and ammunition in a bag in

his truck.  Four minors opened the truck—it was unlocked—and found the firearm.  *Id.*  One then shot and killed another, accidentally.  *Id.*  The mother of the decedent sued the owner of the firearm for negligence.  *Id.* at 170.  The Montana Supreme Court concluded that there was no proximate cause, explaining that "the series of intervening acts which included two criminal acts and one grossly negligent act was reasonably unforeseeable and, thereby, cut off all liability on the part of [the weapon's owner] for [the decedent's] unfortunate death."  *Id.* at 179.

We also note that California courts have relied on the Restatement (Third) of Torts for guidance in analyzing proximate causation.  *See, e.g.*, *Shih*, 53 Cal. App. 5th at 1069; *Modisette*, 30 Cal. App. 5th at 154.  Intervening criminal acts do not categorically bar liability.  Restatement (Third) of Torts, § 34 cmt. e.  But whether an intervening act is "unforeseeable, unusual, or highly culpable . . . may bear on whether the harm is within the scope of the risk."  *Id.*  Here, at least one criminal act (the theft) and at least one accident (the bullet ricocheting after Lopez-Sanchez discharged the pistol) occurred after Woychowski left the pistol in his vehicle.  The chain of events resulted in harm that was simply too attenuated from Woychowski's initial act for liability to be imposed.

Plaintiffs contend that tortious or criminal conduct by third parties does not break causation where the third party's conduct was a foreseeable result of the defendant's initial negligence.  But the cases that Plaintiffs cite do not support their argument.  Plaintiffs rely on two decisions involving strict products liability, a doctrine that has no relevance here.  *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020); *Collins v. Navistar, Inc.*, 214 Cal. App. 4th 1486 (2013).

*Shipp v. Western Engineering, Inc.*, 55 Cal. App. 5th 476 (2020), does not discuss proximate causation. Nor does *Truck Insurance Exchange v. AMCO Insurance Co.*, 56 Cal. App. 5th 619 (2020). Finally, Plaintiffs cite *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099 (2015). But that decision turned on interpretation of a *statute* establishing that a public entity could be held liable for injury proximately caused by a dangerous condition of its property, if the risk of injury was reasonably foreseeable and the entity could have taken corrective measures. *Id.* at 1102. No similar statute facilitates the imposition of liability here. Plaintiffs otherwise fail to point to authority, and we have found none, establishing that Woychowski's conduct was the proximate cause of the harm.

In sum, we conclude that Woychowski's storage of the pistol was too tenuously connected to Ms. Steinle's death for the proximate cause element to be satisfied.

**AFFIRMED.**